UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF NORTH CAROLINA

---

Louisiana-Pacific Corporation and
Louisiana-Pacific Canada Ltd.,

Court File No. 1:12-cv-625

Plaintiffs,

**Complaint and Jury Demand**

v.

Akzo Nobel Coatings, Inc., Akzo Nobel
Coatings, Ltd, and John Does 1-10,

Defendants.

---

Plaintiffs Louisiana-Pacific Corporation and Louisiana-Pacific Canada Ltd. bring this Complaint and state and allege as follows:

### Summary of Action

1. This action arises from the premature failure of paint Defendants sold for use on certain prefinished exterior siding Plaintiffs manufactured and sold to consumers primarily in Canada and Europe but also certain parts of the United States.

2. Because of the failures and deficiencies of paint supplied by Defendants, Plaintiffs have paid millions of dollars to resolve warranty claims made by their customers. Plaintiffs continue to receive and pay claims related to the deficiencies in at least some of Defendants' paint formulations and may receive additional claims in the future.

3. Pursuant to a written 15-year warranty Defendants provided for their paints and the resulting finish, as well as the applicable common and statutory law, Defendants are obligated to reimburse Plaintiffs for warranty payments Plaintiffs make to their customers.

1

Defendants are also obligated to reimburse Plaintiffs for additional damages and expenses related to the paint failures, including, but not limited to, damage to goodwill and reputation and the costs associated with handling warranty claims presented by consumers.

4.      Plaintiffs provided Defendants with notice of their claim and gave Defendants the opportunity to reimburse Plaintiffs without litigation.  Defendants refused, forcing Plaintiffs to bring this action.

### The Plaintiffs

5.      Louisiana Pacific Corporation is a publicly-held entity that maintains its principal place of business in Nashville, Tennessee.

6.      Louisiana Pacific Corporation operates facilities in Roaring River, North Carolina, and employs approximately 550 people in North Carolina.  Louisiana Pacific Corporation manufactures and sells many products, including prefinished siding used in the construction industry.

7.      Louisiana-Pacific Canada Ltd. is a foreign entity that maintains its principal place of business in Canada.  Louisiana Pacific Canada Ltd. manufactures and sells prefinished siding and other products used in the construction industry.

8.      Louisiana Pacific Corporation is the parent corporation of Louisiana-Pacific Canada Ltd. (collectively "Louisiana Pacific").

### The Defendants

9.      Defendant Akzo Nobel Coatings, Inc. is a publicly-held entity that is in the business, among other things, of advertising, warranting, manufacturing, and selling paint and coatings.

2

10. Akzo Nobel Coatings, Inc. is a Delaware corporation and maintains its principal place of business in Kentucky. Akzo Nobel Coatings, Inc. owns and operates facilities within this judicial district in High Point, North Carolina, and has operations elsewhere within North Carolina.

11. Upon information and belief, Akzo Nobel Coatings Ltd. is a foreign entity that does business, maintains operations, and employs people in High Point, North Carolina.

12. Akzo Nobel Coatings, Inc. and Akzo Nobel Coatings Ltd. (hereinafter collectively referred to as "Akzo") have acted in concert with each other with the respect to the actions and omissions alleged herein, are jointly and/or severally liable to Louisiana Pacific as joint venturers, or in the alternative, are subject to an agency relationship.

13. John Does 1-10 are other persons or entities that may have been involved in the design, formulation, sale, testing, and investigation of the paint and coatings sold to Louisiana Pacific for use on CanExel® siding. The identity of any John Does involved in the matters described herein is unknown despite Louisiana Pacific's best efforts to identify these parties.

## Jurisdiction and Venue

14. This Court has jurisdiction over the parties and the causes of action asserted herein pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.

15. The Court has jurisdiction over Defendants because Defendants have purposefully established contacts with the Middle District of North Carolina, do business in

3

the district, and because Louisiana Pacific's causes of action arose at least in part out of those contacts.

16. Venue is proper before this Court pursuant to 28 U.S.C. § 1391 because Defendants transact business in North Carolina and within this district, maintain offices and operations in this district, and a substantial part of the events giving rise to this lawsuit occurred in this district.

## Factual Background

17. Louisiana Pacific manufactures a siding product called CanExel®. CanExel® is a prefinished wood siding made from wood fiber, resin, and wax fused together under high pressure.

18. CanExel® is used in the construction industry and is primarily used as an exterior siding product. CanExel® is principally sold in Canada and Europe but was also sold in certain parts of the United States.

19. An advantage of CanExel® is that it is prefinished during manufacture. This prefinishing means that the siding is generally finished with basecoat and topcoat paint at Louisiana Pacific's manufacturing facility.

20. CanExel® is available in a variety of colors and is sold with a substantial warranty against paint failure. Subject to its terms and conditions, the CanExel® warranty provides up to a 15-year warranty on the finish of the siding.

21. Akzo manufactures and sells paint and other coatings used for a wide variety of applications. Akzo maintains a substantial operation within this judicial district in High Point, North Carolina.

4

22. Akzo is one of the world's largest manufacturers of wood coating products. Akzo employs a team of chemists and other technical personnel in North Carolina that are responsible for, among other things, developing, improving, marketing, and providing technical support for Akzo's wood coating products.

23. According to Akzo, its "state-of-the-art technology, equipment, and processes coupled with Akzo Nobel's team of chemists and engineers, has made Akzo Nobel an industry leader."

24. In the 1990's, Akzo specially developed, formulated, and manufactured paint it sold to Louisiana Pacific for use as finish on CanExel® siding.

25. Because the performance of the paint and finish on the siding is an important aspect of the siding's performance, Akzo and Louisiana Pacific worked closely together to develop a finishing system process that would provide a superior finish. This process included having Akzo representatives on site at Louisiana Pacific's facility during all production shifts as well as routine meetings and communication about the siding finishing process.

26. As part of this business relationship, Akzo promised that it would formulate and deliver paint to Louisiana Pacific that would, among other things: (1) adhere satisfactorily to the substrate; (2) not peel, blister, crack or check; and (3) not unduly change color from the effects of weathering.

27. Louisiana Pacific relied upon Akzo and its professed expertise as a leader in the wood coating industry to formulate and deliver paint to Louisiana Pacific that would,

5

among other things: (1) adhere satisfactorily to the substrate; (2) not peel, blister, crack or check; and (3) not unduly change color from the effects of weathering.

28.     Louisiana Pacific had historically used softwoods to manufacture CanExel® siding and received an insignificant number of warranty claims from consumers related to issues with the paint supplied by Akzo.

29.     In the early 2000s, Louisiana Pacific informed Akzo that reduced availability of softwoods required it to begin using hardwoods to manufacture CanExel® siding. Louisiana Pacific asked whether Akzo could provide paint that would perform satisfactorily on CanExel® siding made using hardwoods.

30.     Louisiana Pacific relied upon Akzo's claimed expertise in the development, formulation, and manufacture of paints and coatings and reasonably expected that Akzo would properly develop, formulate, test, and manufacture paint fit for long-term exterior use on CanExel® siding.

31.     Although the paint Akzo had supplied to Louisiana Pacific for many years had worked well on CanExel® siding, Akzo told Louisiana Pacific that a new paint formulation would be required.  Louisiana Pacific relied on Akzo's expertise and reiterated to Akzo that: (1) it expected that the new paint would perform well for long-term exterior use on CanExel® siding; and (2) it would require Akzo to provide a 15-year warranty for the paint.

32.     Akzo personnel in High Point, North Carolina, then began developing a new paint that it would supply to Louisiana Pacific for use on CanExel® siding.  Akzo Nobel Coatings, Inc. assumed the primary responsibility for the technical aspects of identifying or developing the new paint.

6

33. Akzo Nobel Coatings, Inc. and its representatives also began working on the development of a new paint to supply to Louisiana Pacific for use on CanExel® siding.

34. During its transition from softwoods to hardwoods, Louisiana Pacific provided numerous samples of the new CanExel® siding to Akzo to allow it to choose or formulate an appropriate paint for this siding. Akzo personnel in North Carolina, including but not limited to Forest Fleming, analyzed the CanExel® siding samples made from hardwoods in North Carolina.

35. Akzo ultimately recommended to Louisiana Pacific that a new dual-resin paint called Dual Resin M be used on CanExel® siding made from hard woods.

36. During this reformulation process, Akzo repeatedly assured Louisiana Pacific that the new Dual Resin M paint it would supply for use on CanExel® siding would perform well and would: (1) adhere satisfactorily to the substrate; (2) not peel, blister, crack or check; and (3) not unduly change color from the effects of weathering.

37. In numerous meetings and communications surrounding this reformulation, Akzo representatives Forest Fleming, Fern Gemus, Denis Berthiaume, and Jean-Francois Caron falsely represented to Louisiana Pacific that Akzo's new Dual Resin M paint formulation had been adequately tested, was fit for use, and would perform well on the new CanExel® siding.

38. Many of these representations took place in North Carolina and Canada during technical committee meetings between Louisiana Pacific and Akzo on dates including, but not limited to, January 19, 2000; April 25, 2000; August 9, 2000; December 13,

7

2000; May 3, 2001; August 8, 2001; December 18, 2001; April 8, 2002; and February 18, 2003.

39.   Although Akzo represented that the new Dual Resin M paint was a proven product, Akzo had not previously used this formulation for this type of application.  Akzo, however, withheld this material information from Louisiana Pacific.

40.   Akzo also repeatedly assured Louisiana Pacific in written communications that its new Dual Resin M paint formulation had been adequately tested and would perform well on the new CanExel® siding.  Examples of such representations include Akzo employee Denis Berthiaume's letters to Barry Smith of Louisiana Pacific dated April 15, 2002 and July 17, 2002.

41.   Akzo also repeatedly provided Louisiana Pacific with information that was represented as being test data that Akzo claimed to support a conclusion that its new Dual Resin M paint formulation had been adequately tested and would perform well on CanExel® siding.  Examples of such representations include the March 19, 2002, "Test Fence Presentation" given by Akzo in High Point, North Carolina, to Louisiana Pacific representatives.

42.   The limited testing Akzo had performed on the new Dual Resin M paint included "test fence" testing carried out by employees of Akzo Nobel, Inc. at Akzo's facilities in High Point, North Carolina.

43.   Akzo Nobel Coatings, Inc. also commissioned third parties to conduct testing of the new Dual Resin M paint.  Those test results indicated that the paint did not perform as well as the paint Akzo previously sold to Louisiana Pacific.  Akzo representatives Forest

8

Fleming, Fern Gemus, Denis Berthiaume, Jean-Francois Caron, and potentially others concealed those results from Louisiana Pacific.

44. The third-party consultant Akzo hired for this paint formulation and testing indicated in a written report to Akzo that for performance closest to the paint that Akzo had previously supplied to Louisiana Pacific, which had performed well over many years, that Akzo should use "Cross Linker B" as part of the formula.

45. Akzo, however, did not use Cross Linker B and instead used Cross Linker A for the new Dual Resin M paint it provided to Louisiana Pacific.

46. The written report from the third-party consultant further indicated that Cross Linker A did not obtain sufficient crosslinking (or cure) if it was not heated above 370ºF. The consultant therefore recommended that if Akzo was going to use Cross Linker A for the new Dual Resin M paint, that the paint must be cured above 370ºF to achieve proper crosslinking and long-term durability. Akzo representatives Forest Fleming, Fern Gemus, Denis Berthiaume, Jean-Francois Caron, and potentially others concealed those results from Louisiana Pacific.

47. While concealing the third-party consultant's test results and recommendations, Akzo disregarded the consultant's advice and chose Cross Linker A instead of the Cross Linker B that had been shown to perform like the paint previously provided to Louisiana Pacific.

48. Despite using Cross Linker A in the new Dual Resin M paint it sold to Louisiana Pacific, Akzo did not tell Louisiana Pacific that the paint needed to be cured at a

9

temperature above 370ºF as the third-party testing had indicated was necessary for long-term performance of the paint.

49. Akzo instead directed Louisiana Pacific to cure the paint between 340ºF and 360ºF, thereby assuring that the paint would not properly crosslink and would not achieve the cure and finish necessary for long-term performance on exterior siding.

50. The report referenced in the preceding paragraphs was commissioned by Akzo Nobel Coatings, Inc. Neither of the Akzo entities named as Defendants in this lawsuit ever provided this report or its contents to Louisiana Pacific.

51. Akzo subsequently disclaimed the validity of this third-party testing but did not perform or commission testing that it believed would have been appropriate to evaluate the new Dual Resin M paint it represented to Louisiana Pacific as being fit for long-term exterior use on CanExel® siding.

52. At about the same time Akzo was developing its new Dual Resin M paint formulation, Louisiana Pacific and Akzo updated some of their contractual agreements. In particular, the parties began updating and revising a 15-year warranty ("the Warranty") on the paint that Akzo provided to Louisiana Pacific for CanExel® siding.

53. The Warranty was drafted by Akzo representatives in High Point, North Carolina and discussions leading up to that Warranty took place, in part, in High Point, North Carolina.

54. Pursuant to the Warranty, Akzo provided a 15-year warranty on its paint and the resulting finish on CanExel® siding and agreed to reimburse Louisiana Pacific for claims Louisiana Pacific paid to its customers for paint failures.

10

55. Pursuant to the Warranty, Akzo promised that its paint would: (1) adhere satisfactorily to the substrate; (2) not peel, blister, crack or check; and (3) not unduly change color from the effects of weathering.

56. The Warranty describes various finishing and quality control processes and standards that were discussed and revised over time by the parties in person at various locations including High Point and Roaring River, North Carolina, and East River, Nova Scotia. Akzo had significant input in developing and describing those processes and standards by virtue of its employees' continuous presence at the Louisiana Pacific facility and through Akzo's research and testing efforts in High Point, North Carolina.

57. Akzo representatives Rad Darby and Fernand Gemus signed the Warranty in March 2003. Upon information and belief, Rad Darby was a North Carolina resident and signed the document in High Point, North Carolina.

58. Pursuant to the various contractual relationships, their ongoing business relationship, reliance on Akzo's representations, and the Warranty, Louisiana Pacific purchased millions of dollars of exterior paint from Akzo for CanExel® siding each year.

59. In making these ongoing purchases of the new Dual Resin M paint from Akzo, Louisiana Pacific relied upon the ongoing information and communications from Akzo that represented that the Akzo paint would perform well, was fit for use on CanExel® siding, and had been adequately tested for that application. Many of these representations took place in North Carolina and Canada during technical committee meetings between Louisiana Pacific and Akzo on dates including, but not limited to, August 13, 2003; January 15, 2004; June 10, 2004; September 22, 2004; March 22, 2005; July 26, 2005; September 21,

11

2005; April 6, 2006; April 24, 2007; October 9, 2007; February 14, 2008; August 14, 2008; and December 2, 2008. Akzo representatives including Forest Fleming, Fern Gemus, Denis Berthiaume, and Jean-Francois Caron made these representations.

60. Akzo and its representatives, including Forest Fleming, Fern Gemus, Denis Berthiaume, and Jean-Francois Caron, falsely represented that the Akzo new Dual Resin M paint would perform well, was fit for use on CanExel® siding, and had been adequately tested for that application all in an effort to influence Louisiana Pacific to purchase and continue to purchase paint from Akzo.

61. Pursuant to the various contractual relationships, their ongoing business relationship, reliance on Akzo's representations, and the Warranty, Akzo representatives were present at the Louisiana Pacific manufacturing facility and monitored and provided input about the finishing and quality control processes on a daily basis.

62. Akzo representatives reviewed the Louisiana Pacific manufacturing and finishing processes on a daily basis and received CanExel® samples for quality control purposes at least once during each manufacturing shift.

63. Pursuant to the various contractual relationships, their ongoing business relationship, and the Warranty, Akzo sent CanExel® samples to its High Point, North Carolina, facility for testing and analysis. In addition, the representatives of Louisiana Pacific and Akzo routinely met for technical review meetings to discuss the paint and finishing process. Some of those meetings occurred in High Point, North Carolina.

12

64. After inducing Louisiana Pacific to purchase the new Dual Resin M paint, Akzo maintained test fences and performed technical review of CanExel® siding coated with the new Dual Resin M paint at its facilities in High Point, North Carolina.

65. To the extent Akzo now claims that Louisiana Pacific's manufacturing and finishing procedures differed from the processes described in the Warranty, Akzo was fully aware of the Louisiana Pacific processes because Akzo's employees were on-site at Louisiana Pacific, were aware of the processes being used, provided input and recommendations about those processes, did their own testing and quality control on CanExel® siding, and accepted those processes for purposes of the Warranty coverage.

66. Akzo, by virtue of the daily presence of its representatives at the Louisiana Pacific facility, its daily monitoring of the manufacturing processes, its independent quality control and analysis of CanExel® samples, and its ongoing communication with Louisiana Pacific about its manufacturing and finishing procedures, consented to and approved the processes used by Louisiana Pacific to manufacture and finish CanExel® siding.

67. Because the terms and conditions of the CanExel® warranties provided to consumers cover, as described in the actual language of the warranties themselves, certain types of paint failures, Louisiana Pacific began to receive warranty claims for the failure of Akzo Dual Resin M paint on CanExel® siding from its customers and others in the construction industry. Those claims primarily related to the premature failure of the Akzo Dual Resin M paint through cracking, peeling, blistering, or blushing (discoloration).

13

68. Certain colors of the Akzo Dual Resin M paint have caused an unusually high number of warranty claims for failures related to the cracking, peeling, blistering, and blushing of the paint finish on CanExel® siding.

69. Subsequent testing and analysis has shown that certain Akzo Dual Resin M paints will prematurely crack, peel, blister, or otherwise fail. Akzo's own testing has shown similar failures.

70. The paint failures seen with Akzo's new Dual Resin M paint are grossly disproportionate to the claims received for siding coated with Akzo's prior paint formulation, which used different resins and different formulations.

71. To-date, Louisiana Pacific has paid millions of dollars to resolve warranty claims submitted by customers in Canada, Europe, and the United States for the failure of Akzo Dual Resin M paint on CanExel® siding.

72. Louisiana Pacific continues to receive, and may in the future receive, additional customer warranty claims for the failure of Akzo Dual Resin M paint on CanExel® siding.

73. After it started receiving an unusual number of warranty claims for paint failures, Louisiana Pacific provided notice of this problem to Akzo and asked Akzo to determine the cause of the failures.

74. In various communications, many of which took place in or were sent from North Carolina, Akzo concealed from Louisiana Pacific the true reasons the paint was failing and claimed that it could not determine why some of the paint was failing prematurely.

14

75. Akzo in fact knew that its paint was failing because of problems with the new paint's formulation and concealed this information from Louisiana Pacific.

76. Akzo had consulted with third parties to conduct analysis of the paint failures and the results of that testing indicated that the formulation of the new Dual Resin M paint was to blame for the failures. In addition, the results indicated that Akzo had given Louisiana Pacific incorrect information about how to finish the paint during manufacture and that incorrect information led to a decrease in the paint's long-term durability.

77. Despite knowing that the paint formulation and the finish instructions it had given to Louisiana Pacific were the cause of the Dual Resin M paint failures, Akzo personnel including Forest Fleming, Fern Gemus, Denis Berthiaume, and Jean-Francois Caron concealed these material facts from Louisiana Pacific.

78. Relying upon Akzo's deceptive communications and concealment of the true reasons for the paint failure, Louisiana Pacific continued to do business with and purchase Dual Resin M and other paints from Akzo for use on CanExel® siding. These ongoing deceptive communications and concealment affected commerce in the state of North Carolina and caused damage to Louisiana Pacific in North Carolina.

79. Akzo's deceptive communications and active concealment of the true reasons for the paint failure prevented Louisiana Pacific from identifying the cause of the paint failures and its potential cause of action, thereby tolling the accrual of the various causes of action asserted herein.

80. Louisiana Pacific acted reasonably and with due diligence to identify the cause of the Dual Resin M paint failures.

15

81. Ultimately, Akzo representatives indicated that changes to the formulation of the Akzo paint had caused performance problems for certain of the Dual Resin M paints sold to Louisiana Pacific.

82. Louisiana Pacific has complied with all material terms of the Warranty and is entitled to reimbursement from Akzo for the CanExel® paint and finish failures.

83. By manufacturing and supplying paint to Louisiana Pacific that failed prematurely and well within warranty, Akzo directly and proximately caused Louisiana Pacific to suffer reasonably foreseeable damages including, without limitation:

a) The costs Louisiana Pacific has incurred, and will incur in the future, to resolve warranty claims brought by customers;

b) The costs Louisiana Pacific incurred to investigate, inspect, and test the defective paint;

c) The costs Louisiana Pacific incurred to investigate, inspect, and adjust the warranty claims presented by customers;

d) The damage to Louisiana Pacific's goodwill, reputation, and business caused by the failure of the paint provided by Akzo; and

e) The attorneys' fees, costs, and expenses associated with this action and Akzo's refusal to reimburse Louisiana Pacific for the damage caused by the defective Akzo paint.

84. Louisiana Pacific provided reasonable notice to Akzo of the defects and problems with the paint by directly contacting Akzo and by tendering to Akzo a request for reimbursement of the claims Louisiana Pacific has received from third parties for expenses, losses, or damages incurred as a result of Akzo paint failures. Akzo did not pay the claims, leaving Louisiana Pacific to pay the third-party claims.

16

85. To-date, Louisiana Pacific has paid millions of dollars to resolve consumer warranty claims caused by paint failures and continues to receive and honor consumer warranty claims for the failure of Akzo's paint.

86. Before the filing of this lawsuit, the parties entered into a Tolling and Standstill Agreement through which the parties agreed to toll the statute of limitations, statutes of repose, and laches defenses. Louisiana Pacific recently terminated that agreement to bring this action.

## Count I

## (Fraudulent Inducement)

87. Louisiana Pacific repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

88. Based on the conduct described herein, Akzo made false representations and concealed information about the testing and analysis performed on the new Dual Resin M paint and its fitness for use for long-term exterior use on CanExel® siding. These were material facts that Akzo had a duty to disclose to Louisiana Pacific before selling the paint to Louisiana Pacific.

89. Akzo personnel, including Forest Fleming, Fern Gemus, Denis Berthiaume, and Jean-Francois Caron knew these representations were false and / or made them recklessly without knowledge of their truth and made the false representations and concealed information with the intent to deceive Louisiana Pacific.

90. Akzo knew that Louisiana Pacific would not purchase the Dual Resin M paint and would not enter into the various agreements described herein if it had been told the

17

truth about the lack of adequate testing and disregard of the third-party consultant's findings about the Dual Resin M paint.

91.     Louisiana Pacific justifiably relied on Akzo's representations about the claimed adequacy of the new Dual Resin M paint, that this was a proven paint formula, and that Akzo had carried out adequate testing and analysis to confirm that the paint was fit for long-term exterior use on CanExel® siding.

92.     Based on its justifiable reliance on Akzo's misrepresentations and concealment of material information, Louisiana Pacific entered into business transactions with Akzo related to the purchase of the new Dual Resin M paint and entered into the contracts with Akzo referenced herein.

93.     Louisiana Pacific would not have purchased the new Dual Resin M paint and would not have entered into contracts with Akzo if Akzo had not made misrepresentations and concealed material information about the claimed adequacy of the new Dual Resin M paint, that it was a proven paint formula, and that Akzo had carried out adequate testing and analysis to confirm that the paint was fit for long-term exterior use on CanExel® siding.

94.     Despite the exercise of due diligence and reasonable care, Louisiana Pacific did not discover Akzo's fraud because of Akzo's active, ongoing concealment of the true cause of the paint failures, as described in this complaint.

95.     As a direct, foreseeable, and proximate result of Akzo's fraudulent inducement, Louisiana Pacific has suffered damages, as detailed above, in an amount in excess of $75,000 to be determined at trial.  Additionally, Louisiana Pacific is entitled to rescission or reformation of the contract terms.

## Count II

## (Breach of Express Warranty)

96. Louisiana Pacific repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

97. Akzo expressly warranted that the paint it supplied for use on Louisiana Pacific's prefinished CanExel® siding would, among other things: (1) adhere satisfactorily to the substrate; (2) not peel, blister, crack or check; and (3) not unduly change color from the effects of weathering.

98. Akzo also expressly warranted that its paint would be: (1) free from defects in design, materials, and workmanship; (2) would conform strictly to its own specifications; and (3) would be fit and sufficient for use on Louisiana Pacific's prefinished CanExel® siding.

99. Akzo breached these express warranties by supplying Dual Resin M paint that did not properly adhere to the substrate, cracked, peeled, blistered, checked, and faded prematurely when applied to CanExel® siding.

100. Louisiana Pacific has provided notice of these breaches and has complied with any applicable notice requirement.

101. As a direct result of the failures and defects in Akzo's paint, Louisiana Pacific has paid warranty claims brought by its customers and consumers. Louisiana Pacific has tendered those claims to Akzo for reimbursement under the parties' various agreements.

102. Akzo has refused to honor its express warranties and refuses to reimburse Louisiana Pacific for claims paid as a result of the failures and defects in Akzo's Dual Resin M paint.

103. As a direct, foreseeable, and proximate result of Akzo's breach of express warranties, Louisiana Pacific has suffered damages, as detailed above, in an amount in excess of $75,000 to be determined at trial.

## Count III

### (Breach of Implied Warranty of Merchantability)

104. Louisiana Pacific repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

105. Akzo impliedly warranted to Louisiana Pacific that the paint supplied to Louisiana Pacific would be fit for the ordinary use of exterior paint applied to prefinished siding.

106. Akzo breached the implied warranty of merchantability by supplying Dual Resin M paint that was defective and unfit for its ordinary use when applied as an exterior finish on CanExel® siding.

107. As a direct, foreseeable, and proximate result of Akzo's breach of warranty, Louisiana Pacific has suffered damages, as detailed above, in an amount in excess of $75,000 to be determined at trial.

## Count IV

### (Breach of Implied Warranty of Fitness for a Particular Purpose)

108. Louisiana Pacific repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

20

109. Akzo impliedly warranted to Louisiana Pacific that the paint supplied to Louisiana Pacific would be fit for its particular purpose of being applied to CanExel® siding as an exterior paint.

110. Akzo was aware that Louisiana Pacific would use the paint to finish CanExel® siding and that the paint needed to meet certain performance requirements for use as an exterior finish on siding that was sold with a lengthy warranty to consumers.

111. Louisiana Pacific relied on Akzo's skill and judgment to supply paint that met those requirements. Akzo was aware that Louisiana Pacific was relying on Akzo's skill and judgment to supply paint that met the requirements for use on exterior siding sold to consumers with a lengthy warranty.

112. Akzo breached its implied warranty of fitness for a particular purpose because the Dual Resin M paints it supplied were defective and not fit for Louisiana Pacific's purpose of applying the paint to CanExel® siding for exterior use.

113. As a direct, foreseeable, and proximate result of Akzo's breach of warranty, Louisiana Pacific has suffered damages, as detailed above, in an amount in excess of $75,000 to be determined at trial.

## Count V

## (Breach of Contract)

114. Louisiana Pacific repeats and realleges the allegations of the foregoing as if fully set forth herein.

115. Pursuant to the various written and other agreements between Louisiana Pacific and Akzo, Akzo agreed to supply Louisiana Pacific with paint that would, among

other things, adhere satisfactorily to the substrate and would not peel, blister, crack, check, or change color within the warranted period.

116.     Akzo breached its contract with Louisiana Pacific by failing to supply paint that conformed to or met the contract terms and requirements.

117.     As a direct, foreseeable, and proximate result of Akzo's breach of the parties' contracts and agreements, Louisiana Pacific has suffered damages, as detailed above, in an amount in excess of $75,000 to be determined at trial.

## Count VI

## (Declaratory Judgment)

118.     Louisiana Pacific repeats and realleges the allegations of the foregoing as if fully set forth herein.

119.     A real and justiciable controversy exists among the parties with respect to their rights and obligations under the written agreements discussed herein.  Pursuant to 28 U.S.C. § 2201, the Court has authority to declare the rights and obligations of Louisiana Pacific and Akzo with respect to this controversy.

120.     Louisiana Pacific seeks a declaration, among other things, that Akzo is obligated to reimburse Louisiana Pacific for past and future warranty claims that relate to or arise from warranted failures of Akzo Dual Resin M paint.

121.     Louisiana Pacific also seeks a declaration that it has complied with the terms of the Warranty.  Louisiana Pacific further seeks a declaration that to the extent Akzo now claims that Louisiana Pacific's manufacturing and finishing procedures differed from the processes described in the Warranty, Akzo was fully aware of the Louisiana Pacific processes

22

because Akzo's employees were on-site at Louisiana Pacific, were aware of the processes being used, provided input and recommendations about those processes, did their own testing and quality control on CanExel® siding, and accepted those processes for purposes of the Warranty coverage, thereby reforming and amending the Warranty to reflect the parties' agreement and course of dealing.

122. Louisiana Pacific also seeks a declaration that certain aspects of the Akzo express Warranty are unenforceable under the applicable law and therefore cannot be enforced. Those provisions include but are not limited to, any purported attempt to limit the amount owed by Akzo under the Warranty and any purported disclaimers of claims or remedies.

123. Louisiana Pacific also seeks a declaration that based on the circumstances alleged in this complaint, all or parts of the Akzo express Warranty are void or subject to rescission because it fails of its essential purpose.

124. Louisiana Pacific also seeks a declaration that certain aspects of the Akzo express Warranty are vague, ambiguous, unconscionable, or unenforceable under the applicable law and therefore cannot be enforced or must be construed against Akzo.

125. Louisiana Pacific also seeks a declaration regarding the interplay of the various contractual documents, invoices, purchase and sales orders, and their attendant terms and conditions to determine whether certain provisions conflict with each other, and if so, what terms will be applied to this dispute.

23

## Count VII

## (Unfair and Deceptive Trade Practices Act)

126. Louisiana Pacific repeats and realleges the allegations of the foregoing as if fully set forth herein.

127. Akzo's actions as described herein, which are incorporated by reference, are in and affecting commerce in North Carolina, and are unfair and deceptive practices constituting violations of N.C. Gen. Stat. § 75-1, *et seq.*

128. By engaging in the conduct described herein, including making numerous representations and omissions about the fitness of its Dual Resin M paint for use on CanExel® siding and the nature and adequacy of Akzo's testing and research on that paint for such a use, Akzo engaged in deceptive practices under the N.C. Gen. Stat. § 75-1, *et seq.* by engaging in conduct that had the capacity or tendency to deceive an entity like Louisiana Pacific and created the likelihood of deception.

129. Louisiana Pacific relied on Akzo's unfair and deceptive practices in deciding to apply, purchase, and continue to purchase Akzo's Dual Resin M paint for use on CanExel® siding.

130. Akzo's unfair and deceptive practices included, but were not limited to, its ongoing statements and representations about the formulation and suitability of its Dual Resin M paint for use on CanExel® siding and the nature and adequacy of Akzo's testing and research on that paint for such a use.

131. Akzo made these unfair and deceptive communications through its representatives, including but not limited to, Forest Fleming, Fern Gemus, Denis

24

Berthiaume, and Jean-Francois Caron during the technical meetings between the parties previously described herein and in various other written and verbal communications.

132.   These unfair and deceptive representations and communications were relied upon by Louisiana Pacific and caused it to continue to purchase paint from Akzo that it would not have purchased had Akzo not engaged in conduct that violated N.C. Gen. Stat. § 75-1, *et seq.*

133.   Through its ongoing representations, omissions, and assurances about the suitability of its new Dual Resin M paint formulation for use on CanExel® siding and about the adequacy of the testing and analysis of the paint for such use, Akzo fraudulently concealed the cause of the problems with its paint and precluded Louisiana Pacific from identifying the cause of the paint failures and its potential cause of action against Akzo.

134.   As a direct and proximate result of Akzo's conduct, Louisiana Pacific has been and continues to be damaged in North Carolina through the loss of business, damage to the competitive advantages it has earned in the marketplace, damage to its goodwill and reputation, and loss of money paid to resolve consumer claims.

135.   As a result of Akzo's violations of N.C. Gen. Stat. § 75-1, *et seq.*, Louisiana Pacific is entitled to actual damages trebled pursuant to statute, attorneys' fees and costs, injunctive relief, punitive damages, and such other relief the Court deems fair and just.

### Jury Demand

Louisiana Pacific hereby demands trial by jury on all claims and issues permitted by law.

**Prayer for Relief**

WHEREFORE, Louisiana Pacific prays for relief against Defendants as follows:

1.  Compensation for damages suffered by Plaintiffs;

2.  Award of treble damages, punitive damages, and all other relief possible under N.C. Gen. Stat. § 75-1, *et seq*;

3.  Award of reasonable attorneys' fees and costs and disbursements incurred herein;

4.  Enjoining Defendants from denying the tender of future claims for paint failures and directing Defendants to reimburse Plaintiffs for such claims;

5.  Declaring the rights and obligations of the parties under the various agreements; and

6.  Such other and further relief the Court deems just and equitable.

Dated: June 22, 2012

**Cranfill Sumner & Hartzog LLP**

/s/Richard T. Boyette
Richard T. Boyette, NC State Bar #7623
P.O. Box 27808
Raleigh, NC 27611-7808
(Tel) 919-863-8729
(Fax) 919-863-3519
E-mail: rtb@cshlaw.com

**Larson · King, LLP**
Mark A. Solheim, MN State Bar #213226
Shawn M. Raiter, MN State Bar #240424
2800 Wells Fargo Place
30 East 7th Street
St. Paul, MN 55101
(Tel) 651-312-6500
(Fax) 651-312-6618
E-mail: sraiter@larsonking.com

***Attorneys for Plaintiffs Louisiana Pacific Corporation and Louisiana Pacific Canada Ltd.***

26