UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

Louisiana-Pacific Corporation and
Louisiana-Pacific Canada Ltd.,

        Plaintiffs,

vs.

Akzo Nobel Coatings, Inc., Akzo Nobel
Coatings, Ltd., and John Does 1-10,

        Defendants.

Case No.: 1:12-cv-625

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS ON THE GROUNDS OF *FORUM NON CONVENIENS*

Defendants Akzo Nobel Coatings, Inc. and Akzo Nobel Coatings Ltd.[1] submit this Memorandum in support of their Motion to Dismiss on the Grounds of *Forum Non Conveniens*.

### NATURE OF THE MATTER BEFORE THE COURT

This case is about wood coatings that were developed, manufactured, and sold in Canada by a Canadian company, Akzo Nobel Coatings Ltd. ("Akzo Nobel"), and were purchased and applied in Canada by a Canadian company, Louisiana-Pacific Canada Ltd. ("LP Canada"). The conditions under which Akzo Nobel warranted the performance of

---

[1] In its special limited appearance, Akzo Nobel Coatings Ltd. files this motion to dismiss for *forum non conveniens* concurrently with a motion to dismiss for lack of personal jurisdiction. In the interest of convenience, fairness, and judicial economy, Defendants submit the most efficient course is for the Court to resolve this entire case by granting this *forum non conveniens* motion prior to addressing questions of personal jurisdiction. *See Wolff v. Zip.ca, Inc.*, 2009 WL 1628887, *1-2 (M.D.N.C. 2009) (citing *Sinochem Int'l Co. Ltd., v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007)).

the coatings were described in an agreement between Akzo Nobel and LP Canada governed by Canadian law.[2] It follows that any dispute relating to these coatings must be resolved in Canada:

> [T]he overwhelming percentage of proof – both by witness and documents – being in Canada, it can only proceed there. After all, appellant chose to make its Canadian subsidiary the sole performing party to the contract; it is located in Canada; appellant performed the contract there; and Canadian law was chosen by appellant to apply to all interpretations of it. Thus there is more than a Canadian nexus here. The whole case is Canadian. Appellant made his bed in Canada; now he must lie in it if he wishes to proceed.

*J.F. Pritchard & Co. v. Dow Chem. of Canada, Ltd.*, 462 F.2d 998, 1002 (8th Cir. 1972) (affirming dismissal on *forum non conveniens* grounds). Defendants respectfully request that the Court reach the same result and dismiss this case on the grounds of *forum non conveniens*.

This case arises from Akzo Nobel's manufacture and sale of coating in Canada to LP Canada for use on its prefinished exterior composite siding manufactured in Canada. Akzo Nobel and LP Canada agreed to a 15-year Warranty related to the coating's performance on the siding. The Warranty is governed by Canadian law. Although this is without question a Canadian-centered litigation, Plaintiffs filed suit in North Carolina, alleging that Akzo Nobel's coating failed prematurely and seeking damages resulting from the alleged coating failure.

---

[2] The U.S. companies named in the Complaint, Louisiana-Pacific Corporation and Akzo Nobel Coatings, Inc., have next to nothing to do with this dispute. They were undoubtedly named to create an illusion that the dispute is somehow connected to the U.S.

A *forum non conveniens* analysis confirms that this dispute should be litigated in Canada, not North Carolina. Nearly all of the witnesses and relevant documents are located in Canada. Many essential witnesses are not employed by the parties; and they live in Canada, outside the subpoena power of this Court. Plaintiffs' claims arose in Canada. All of the coating and siding was manufactured and sold in Canada by a Canadian company. The coating was applied to the siding in Canada by a Canadian company. The Warranty that governs the coating was entered into by two Canadian companies and is governed and construed by the laws of Nova Scotia, Canada.

In short, these are Canadian claims, involving Canadian companies, Canadian manufactured products, Canadian business transactions, Canadian law, and almost exclusively Canadian witnesses and documents. Therefore, this case should be litigated in Canada – not in North Carolina.

## STATEMENT OF PERTINENT FACTS

**I.     The Parties**

Louisiana-Pacific Corp. ("LP Corp.") is a U.S.-based corporation with its principal place of business in Nashville, Tennessee. (Compl. ¶ 5.) LP Canada is a subsidiary of LP Corp. (*Id.* ¶ 8.)

LP Canada is a Canadian manufacturer of construction products, including CanExel prefinished siding. (*Id.* ¶ 7.)[3]

---

[3] LP Canada began manufacturing CanExel siding in 2001, when LP Corp. acquired ABT Canada Ltd. ("ABT Canada"). (Berthiaume Aff. ¶ 5, attached as Exhibit 1.) *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988) (a motion to dismiss for *forum non conveniens* "may be resolved on affidavits presented by the parties"). This memorandum refers to ABT Canada and its successor LP Canada as simply LP Canada.

Akzo Nobel Coatings, Inc. is a manufacturer of various products, including wood coatings and paints, with the principal place of business for its Wood Finishes & Adhesives business unit in Louisville, Kentucky. (Akzo Nobel Coatings, Inc.'s Ans. (Docket No. 19) ¶¶ 9, 10.)

Akzo Nobel is a Canadian company with its headquarters and principal place of business in Canada. (Berthiaume Aff. ¶ 3, attached as Exhibit 1.) Akzo Nobel manufactured and supplied coating for CanExel siding. (*Id.* ¶ 4.)

## II. The Products at Issue

CanExel siding is a prefinished wood siding made from wood fiber, resin, and wax fused together under high pressure. (Compl. ¶ 17.) CanExel siding's pre-finish is generally achieved by applying a basecoat and topcoat to the siding to create a coating. (*Id.* ¶ 19.) LP Canada manufactured and applied the coating to CanExel siding exclusively in East River, Nova Scotia. (Berthiaume Aff. ¶ 6.)

Akzo Nobel began manufacturing and supplying coatings for CanExel siding in the early 1980's. All of the coatings supplied by Akzo Nobel for use on CanExel siding were manufactured in Quebec, Canada. (*Id.* ¶ 4.)

## III. Transition to New Coating

In 1999, LP Canada informed Akzo Nobel that it was switching from softwoods to hardwoods for CanExel siding and would need a coating for the hardwood siding. (*Id.* ¶ 7.) LP Canada worked with Akzo Nobel to identify a coating for use on hardwood CanExel siding. Between 1999 and 2001, Akzo Nobel and LP Canada extensively tested the new hardwood CanExel siding with different coatings. (*Id.* ¶ 8.) In 2001, LP

Canada approved a custom dual resin coating ("CanExel Dual Resin M") for use on CanExel siding. (*Id.* ¶ 9.) Employees working in Canada for Akzo Nobel developed the new coating with some advice from its U.S. affiliate, Akzo Nobel Coatings Inc., which had experience with other dual resin coating systems. (*Id.* ¶ 10.)

As with previous coatings for softwood CanExel siding, Akzo Nobel manufactured CanExel Dual Resin M coating in Quebec, Canada. LP Canada purchased CanExel Dual Resin M coating from Akzo Nobel in Quebec. Akzo Nobel shipped the coating from Quebec to LP Canada in East River, Nova Scotia. LP Canada then applied the coating to CanExel siding at its East River, Nova Scotia facility. (*Id.* ¶ 11.)

**IV.** **The Warranty**

In 2003, LP Canada and Akzo Nobel agreed to a 15-year Warranty related to the performance of the CanExel Dual Resin M coating on the hardwood CanExel siding. (Berthiaume Aff. ¶ 12.) The Warranty provided:

> 11. This Warranty Agreement shall be governed by and construed in accordance with the laws of the Province of Nova Scotia.

(*Id.*) This Warranty replaced a May 17, 1997 warranty between ABT Canada and Akzo Nobel that included the same choice-of-law provision. (*Id.* ¶ 13.)

In 2007, LP Canada began receiving an increasing number of claims related to its CanExel siding, which it attributed to the CanExel Dual Resin M coating. LP Canada advised Akzo Nobel of the increased number of claims in 2008, and it worked with LP Canada to investigate the causes of these increased claims. (*Id.* ¶ 14.)

5

On or about July 5, 2012, LP Canada and its U.S. affiliate filed this lawsuit in the Middle District of North Carolina. Plaintiffs claim that they were damaged because the CanExel Dual Resin M coating did not perform on the hardwood CanExel siding, as required by the 2003 Warranty. The Complaint includes claims for: (1) fraudulent inducement; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) breach of implied warranty of fitness for a particular purpose; (5) breach of contract; (6) declaratory judgment; and (7) violation of North Carolina's Unfair and Deceptive Trade Practices Act.

## QUESTION PRESENTED

> Whether the Court should dismiss this case pursuant to the doctrine of *forum non conveniens*, because Canada is a more convenient and appropriate forum for litigating this dispute.

## ARGUMENT

The cornerstone of a *forum non conveniens* analysis is convenience. *Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 246 (4th Cir. 2011) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981)). "Dismissal for *forum non conveniens* reflects a court's assessment of a 'range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'" *Sinochem,* 549 U.S. at 429 (quoting *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 723 (1996)).

"A *forum non conveniens* dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum." *Tang*, 656 F.3d at

246 (citation omitted). Specifically, the court should dismiss the suit when it finds that: (1) an available and adequate alternative forum exists; and (2) the balance of relevant private and public interest factors favor dismissal. *See Piper Aircraft*, 454 U.S. at 257; *Tang*, 656 F.3d at 249; *Wolff*, 2009 WL 1628887 at *2. *See also Sinochem*, 549 U.S. at 422 (a District Court has the inherent power to dismiss where, as here, "an alternative forum has jurisdiction to hear the case, and … trial in the chosen forum would establish … oppressiveness and vexation to a defendant … out of all proportion to plaintiff's convenience") (citation and internal quotation marks omitted).

All of these considerations – from the availability of an alternative forum to the amount of deference due a plaintiff's forum choice to the weighing of private and public interest factors – serve as proxies to determine whether a foreign jurisdiction is a more convenient forum in which to bring the action. *See Piper*, 454 U.S. at 456. Here, each factor leads to the conclusion that this case should be dismissed in favor of a Canadian forum pursuant to the doctrine of *forum non conveniens*.

I.  **Canada is an Available and Adequate Alternative Forum.**

The initial inquiry in a *forum non conveniens* analysis is whether an adequate alternative forum is available. *Piper Aircraft Co.*, 454 U.S. at 254 n.22. "The existence of an alternative forum depends on two factors: availability and adequacy." *Fidelity Bank PLC v. Northern Fox Shipping N.V.*, 242 Fed. Appx. 84, 90 (4th Cir. 2007); *see also Tang*, 656 F.3d at 249.

### A. Canada is an Available Forum.

An alternative forum is available when the defendants are amenable to service in that jurisdiction. *Tang*, 656 F.2d at 249 (quoting *Piper*, 454 U.S. at 255 n.2). Here, Defendants agree to submit to service of process in Canada and to waive any statute of limitations defense that may arise as a result of re-filing in a proper Canadian court. Under settled Fourth Circuit precedent, Canada is an available alternative forum.

### B. Canada is an Adequate Forum.

"[A] forum is considered adequate when … 'parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy all the same benefits as they might receive in an American Court.'" *Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010). An alternative forum is inadequate only in the "rare circumstance[]" where it provides a remedy "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper*, 454 U.S. at 255 n.2.

In considering *forum non conveniens* motions, courts throughout the United States, including this Court, have consistently recognized that Canada is an adequate forum for litigation. *See, e.g., Wolff*, 2009 WL 1628887 (dismissing the matter on *forum non conveniens* grounds after finding that Canada provided an adequate and available alternative forum); *Nowsco Well Service, Ltd. v. Home Ins. Co.*, 799 F. Supp. 602, 614 (S.D.W.Va. 1991) ("existence of an alternative forum [in Canada] – has been satisfied"), *aff'd*, 974 F.2d 1331 (4th Cir. 1992); *VictoriaTea.com, Inc. v. Cott Beverages, Canada*, 239 F. Supp. 2d 377, 388 (S.D.N.Y. 2003) (holding Canada to be adequate forum and citing additional courts recognizing it as such).

Plaintiffs recognize the adequacy and fairness of the Canadian courts as they have availed themselves of the Canadian courts, including an action involving similar claims and seeking similar damages to those in this lawsuit. *See, e.g., Louisiana-Pacific Canada Ltd. v. British Columbia*, 2006 B.C.S.C. 926, [2006] B.C.J. No. 1377 ("LP found its action in both tort and contract and seeks damages for loss of opportunity, loss of profit, planning and other costs incurred …. LP claims [defendant] breached the contract …. LP also claims damages for what it describes as 'false and misleading representations' made by [defendant] ….").

Moreover, pursuant to the Warranty, LP Canada and Akzo Nobel agreed that any legal matters arising from the Warranty would be governed by the laws of the Province of Nova Scotia, Canada. By agreeing to this term in the Warranty, LP Canada acknowledged that Canadian law provides adequate remedies and damages for claims arising from the performance of the Warranty. *See Wolff*, 2009 WL 1628887 at *3 (dismissing the case on *forum non conveniens* grounds where Plaintiff agreed to a clause providing that Canadian law would govern and the parties would submit to the non-exclusive jurisdiction of Canadian courts).

Because Canada provides Plaintiffs with a forum in which to litigate this dispute and a remedy for the alleged wrong, it is an available and adequate alternative forum.

## II. Private and Public Interest Factors Favor Litigating This Matter in Canada.

Where, as here, an available and adequate alternative forum exists, the next step in the *forum non conveniens* analysis is to consider the private and public interests implicated in the litigation. *Piper Aircraft*, 454 U.S. at 257. In balancing these factors,

the deference afforded a plaintiff's choice of forum "applies with less force when the plaintiff or real parties in interest are foreign," even if there is a nominal U.S. plaintiff. *Piper*, 454 U.S. at 255. Indeed, "[b]ecause the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." *Id.* at 256 and n.24 ("citizenship and residence are proxies for convenience") (citation omitted). Courts must be alert to the possibility that a foreign plaintiff chose a forum, "not because it is convenient, but solely in order to harass the defendant or take advantage of favorable law." *Id*. at 249 n.15. *Piper* instructs courts to distinguish between domestic and foreign plaintiffs by looking at the "real parties in interest," not at nominal plaintiffs who may well have been named simply to manufacture a reason to keep the dispute in a U.S. court.

In this case, because LP Canada is a foreign corporation, its choice of forum is entitled to little deference. The inclusion of U.S.-based LP Corp. as a plaintiff changes nothing. LP Corp.'s involvement with the dispute was negligible. LP Corp. was not a party to the Warranty that serves as the basis for the claims, nor did it manufacture or sell the siding coated with CanExel Dual Resin M. The parties to this dispute are the two Canadian companies – LP Canada and Akzo Nobel. LP Corp. is not a real or necessary party.

Further, deference to this plaintiff's choice of forum presumes some convenience to the plaintiff. Given that nearly all of the witnesses and documents are in Canada, it is not apparent how Plaintiffs' decision to sue in North Carolina was based on convenience. As such, Plaintiffs' selection of North Carolina should receive little, if any, deference.

10
Case 1:12-cv-00625-WO-JLW Document 27 Filed 10/31/12 Page 10 of 19

*See Wolff*, 2009 WL 1628887 at *3 (dismissing a North Carolina plaintiff's lawsuit on *forum non conveniens* grounds where the relevant agreement included a clause that Canadian law governed and the case involved financial problems of a Canadian entity, noting that "[h]is acceptance of these terms weakens his argument that it would be unfair for him to have to litigate away from his home district.")

In the absence of deference to Plaintiffs' choice of forum, the focus of the *forum non conveniens* analysis is on public and private interest factors. The private interest factors include: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for securing the attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of viewing the premises if appropriate; and (5) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947); *Wolff,* 2009 WL 1628887 at *2 (quoting *S & D Coffee, Inc. v. GEI Autowrappers*, 995 F. Supp. 607, 610 (M.D.N.C. 1997)).

The public interest factors include: (1) administrative problems resulting from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems and conflicts of law or the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Gulf Oil*, 330 U.S. at 508-09; *Wolff,* 2009 WL 1628887 at *2 (quoting *S & D Coffee,* 995 F. Supp. at 610).

In this case, the private and public interests overwhelmingly favor Canada as the appropriate forum.

### A. Private Interest Factors Favor Dismissal.

#### 1. *The vast majority of witnesses and documents are located in Canada.*

Plaintiffs claim they have been damaged by failure of the coating applied to pre-finished exterior composite siding. To refute Plaintiffs' claims, Defendants will seek discovery from and call at trial witnesses involved with the development and formulation of the coating, the manufacture and sale of the coating, the manufacture of the siding, and the investigation into LP Canada's pre-suit claims of product failure, as well as any individuals named or referenced in the Complaint.[4] These witnesses include:

**DEVELOPMENT AND FORMULATION OF COATING AT ISSUE**

| *Witness* | *Location* |
|---|---|
| Roger Couture (current employee) | Canada |
| Jean Francois Caron (former employee) | Canada |
| Chuck Walker (former employee) | Canada |
| Kathy Maljaie (former employee) | Canada |

**MANUFACTURE AND SALE OF COATING TO LP CANADA, AND CLAIM INVESTIGATION**

| *Witness* | *Location* |
|---|---|
| Denis Berthiaume (current employee) | Canada |
| Denis Blanchette (current employee) | Canada |
| Fernand Gemus (former employee) | Canada |

---

[4] Due to the early stage of this case, the identification of possible witnesses, documents, and physical evidence is based on information currently known. Defendants reserve the right to amend these lists as additional information becomes available.

| Witness | Location |
|---|---|
| Jean Francois Caron (former employee) | Canada |
| Jim Bignell (former employee) | Canada |
| Forest Fleming (current employee) | North Carolina |

**PURCHASE OF COATING, MANUFACTURE OF SIDING AT ISSUE, AND CLAIM INVESTIGATION**

| Witness | Location |
|---|---|
| Barry Smith (former employee) | Canada |
| Bill Camp (former employee) | Canada |
| George Hirtle (current employee) | Canada |
| Chris Mader (former employee) | Canada |
| David Ritter (current employee) | Tennessee |
| Jack Johnson (current employee) | Michigan |
| Phil Ellwood (former employee) | Unknown |

**COMPLAINT ALLEGES THE FOLLOWING MADE FALSE REPRESENTATIONS, CONCEALED FACTS, AND MADE UNFAIR & DECEPTIVE COMMUNICATIONS**

| Witness | Location |
|---|---|
| Denis Berthiaume (current employee) | Canada |
| Jean Francois Caron (former employee) | Canada |
| Fernand Gemus (former employee) | Canada |
| Forest Fleming (current employee) | North Carolina |

**OTHERS NAMED OR REFERENCED IN COMPLAINT**

| Witness | Location |
|---|---|
| Barry Smith (former employee) | Canada |
| Jim Bignell (former employee) | Canada |
| Chuck Walker (former employee) | Canada |
| Shawn Meisner (former employee) | Canada |
| Mark Fitch (former employee) | Canada |
| Fernand Audette (current employee) | Canada |

13

| Michael Heisler (former employee) | Canada |
| Rad Darby (former employee) | Virginia |

(Berthiaume Aff. ¶¶ 15-19.)

Of the above individuals – which, in part, include everyone referenced in the Complaint – 16 live in Canada and only one lives in North Carolina. Of the four people alleged to have made false representations, concealed facts, or made unfair and deceptive communications, only one lives in North Carolina, while three live in Canada. And of the 12 individuals named or referenced in the Complaint, only <u>one</u> lives in North Carolina while 10 live in Canada.

Further, because the coating was developed, manufactured, and sold in Canada, the vast majority of potentially-relevant documents are kept in Canada. (Berthiaume Aff. ¶ 20.) These include development, manufacturing, quality control, sales, testing, and claim investigation files. Notably, the manufacturing and quality control documents are located in Canada in hard copy form and are extremely voluminous. (*Id*.)

### 2. *This Court cannot compel the attendance of unwilling foreign witnesses at trial.*

A court's ability to compel testimony and documents from non-parties, especially the unwilling, is a significant private factor. Here, a large number of key witnesses are no longer employed by the parties and live in Canada, and, therefore, cannot be compelled to testify at trial in North Carolina:

- Approximately two-thirds (13 of 21) of the witnesses listed above are no longer employed by the parties.

- None of the 13 former employees live in North Carolina.

- 11 of the 13 former employees are known to reside in Canada.

- Of the 12 individuals referenced by Plaintiffs in the Complaint, 9 are former employees, and none of them live in North Carolina.

- 2 of the 4 individuals accused of making false representations and concealing information are former employees, both of whom live in Canada.

While Plaintiffs will argue that Akzo Nobel is legally responsible for its former employees' actions, this Court will be unable to compel them to testify at trial. This Court's inability to compel the vast majority of crucial witnesses to testify at trial significantly harms Defendants' ability to defend themselves. This factor overwhelmingly favors Canada as the appropriate forum.

B. **Public Interest Factors Favor Dismissal.**

1. *The interest of having localized disputes adjudicated at home favors a Canadian forum.*

As the Supreme Court has noted, "[t]here is a local interest in having localized controversies decided at home." *Gulf Oil*, 330 U.S. at 509. "Home" for this controversy is Canada, which has a strong interest in adjudicating this dispute because it involves the manufacture, sale, and distribution of allegedly defective products throughout Canada. As set out above, the coating at issue was manufactured and sold in Canada by Akzo Nobel, a Canadian company. That coating was then shipped from Quebec to the Nova Scotia plant of LP Canada, also a Canadian company. The hardwood composite siding was manufactured and coated in Canada by LP Canada.

Applicability of Canadian substantive law to this dispute further strengthens Canada's interest in having the case decided in its own courts. *See Compania Naviera*

15

*Joanna, SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 200-01 (4th Cir. 2009) (affirming dismissal on *forum non conveniens* when the "prospect of having to interpret and apply Chinese law as it might pertain to liability" was given as a reason for dismissal). LP Canada and Akzo Nobel agreed to a Warranty related to the coating's performance when applied to the siding. These two Canadian companies agreed that the Warranty would be governed by Nova Scotia law.

In contrast, North Carolina has minimal interest in adjudicating this dispute – and any interests it may have are substantially outweighed by the interests of Canada. *See Tang*, 656 F.3d at 252; *NLA Diagnostics LLC v. Theta Technologies Ltd.*, 2012 WL 3202274, *5 (W.D.N.C. 2012). Indeed, courts should allow the trier of fact to hear the pertinent testimony of witnesses live at trial. This interest can only be satisfied in a Canadian forum.

In the end, any minimal interest North Carolina has in this dispute "is simply not sufficient to justify the enormous commitment of judicial and juror time and resources that would inevitably be required if the case were to be tried here." *Piper*, 454 U.S. at 261.

### 2. *Dismissal would avoid unnecessary conflicts of law problems and the necessity of applying foreign law.*

Where foreign law applies, this factor weighs heavily in favor of dismissal. *Piper*, 454 U.S. at 251 ("The doctrine of *forum non conveniens* … is designed in part to help courts avoid conducting complex exercises in comparative law."); *Tang*, 2011 WL

3891934, at *7 (explaining that the *forum non conveniens* doctrine "exists largely to avoid such comparative law problems.").

In this case, the choice-of-law provision in the 2003 Warranty specifies that it "be governed and construed in accordance with the laws of the Province of Nova Scotia." This choice-of-law provision demonstrates that the parties to the Warranty not only contemplated, but also intentionally specified that Nova Scotia law applies to controversies arising from the Warranty.

The applicability of foreign law in this case is exactly the scenario in which dismissal under *forum non conveniens* was intended. In fact, the Supreme Court has recognized that "the public interest factors point towards dismissal where the court would be required to "untangle problems in conflict of laws, and in law foreign to itself." *Piper,* 454 U.S. at 251 (quoting *Gilbert,* 330 U.S. at 509). *See also Wolff*, 2009 WL 1628887 at *3 ("Although this does not rule out hearing the case in North Carolina, the court would be applying foreign law in a dispute involving the financial problems of a Canadian baseball team. This is a matter best handled by the courts in Ottawa. Accordingly, this court will recommend dismissal of the action on *forum non conveniens* grounds.").

## CONCLUSION

This case should be litigated in Canada. With nearly all of the key witnesses and documents located in Canada, it is the most convenient location for trial. Because convenience is the cornerstone of *forum non conveniens* analysis, this overwhelmingly favors Canada as the appropriate forum. Moreover, this is a Canadian dispute; these are Canadian claims, involving Canadian companies, Canadian manufactured products,

17

Canadian business transactions, and the application of Canadian law. If the trial were to proceed in North Carolina, it is likely that a great number of key witnesses will not testify live at trial because they live in Canada, outside the subpoena power of the Court. Defendants, therefore, respectfully request that the Court dismiss Plaintiffs' claims on the grounds of *forum non conveniens*.

This the 31st day of October, 2012.

/s/ Alan W. Duncan
Alan W. Duncan
N.C. State Bar No. 8736
Stephen M. Russell, Jr.
N.C. State Bar No. 35552
SMITH MOORE LEATHERWOOD LLP
300 N. Greene Street, Suite 1400
Greensboro, NC 27401
Telephone: 336-378-5200
Facsimile: 336-378-5400
alan.duncan@smithmoorelaw.com
steve.russell@smithmoorelaw.com

*Attorneys for Defendants Akzo Nobel Coatings, Inc. and Akzo Nobel Coatings Ltd.*

OF COUNSEL:

Harvey L. Kaplan
Mark C. Hegarty
John C. Vaglio
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 54108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hkaplan@shb.com
mhegarty@shb.com
jvaglio@shb.com

## CERTIFICATE OF SERVICE

This is to certify that on this date the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send the notification of such filing to the following:

>Richard T. Boyette (rtb@cshlaw.com)
>*Attorney for Plaintiffs*

This the 31st day of October, 2012.

>/s/ Alan W. Duncan
>Alan W. Duncan
>N.C. State Bar No. 8736
>
>*Attorney for Defendants Akzo Nobel*
>*Coatings, Inc. and Akzo Nobel Coatings Ltd.*