## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF NORTH CAROLINA

Louisiana Pacific Corporation and Louisiana-Pacific Canada Ltd.,

      Plaintiffs,

v.

Akzo Nobel Coatings, Inc., Akzo Nobel Coatings, Ltd, and John Does 1-10,

      Defendants.

Court File No. 1:12-cv-625

**Declaration of Bill Camp in Support of Louisiana Pacific's Memoranda in Opposition to Akzo Nobel Coatings, Ltd.'s Motions to Dismiss**

PROVINCE OF NOVA SCOTIA )
         ) ss.
COUNTY OF LUNENBURG   )

Bill Camp, being first duly sworn, under oath, states as follows:

1. I am more than 18 years old and am competent to testify regarding all matters contained in this affidavit.

2. I am a resident of Chester, Nova Scotia, Canada.

3. I am a retired employee of Louisiana-Pacific Canada Ltd. ("LP Ltd."), a business that makes and sells prefinished siding and other similar products. I worked for LP Ltd., and its predecessor companies, including ABT Canada Limited, for 25 years. I retired in January 2011. The last title I held at LP Ltd. was Manager of Development and Systems.

4. I was heavily involved in discussions at the time of the development, the participation in line trials and review of their results, and the purchase the new Dual Resin M

paint from Akzo Nobel Coatings, Ltd. ("Akzo Ltd.") and Akzo Nobel Coatings, Inc. (Akzo Inc.) for use on CanExel® siding. This years-long process began in the 1999 or 2000.

5.     The Dual Resin M paint was developed primarily in North Carolina. The formulations, modifications, and evaluations of the paint and coating processes used by LP Ltd. were made by or under the direction of Akzo Ltd. representative Forest Fleming. Mr. Fleming, who has always been based in North Carolina, made most of the critical decisions and directed the development and formulation of the Dual Resin M paint from Akzo's operations in High Point, North Carolina.

6.     Mr. Fleming served as the definitive technical resource for paint that Akzo supplied to LP Ltd. for more than 10 years, and Mr. Fleming routinely communicated with LP from North Carolina. It was my understanding and experience that Akzo Ltd. representatives conducted a majority of activities related to the formulation and testing of the Dual Resin M paint at Akzo's operations in High Point, North Carolina. These activities included research and development, testing, and other processes related to paint formulation and application on siding in preparation for line trials to be conducted at LP.

7.     During the formulation and development of the Dual Resin M paint and the express warranty provided with that paint, I was in contact with at least three Akzo Ltd. Representatives: Mr. Fleming, Mr. Smith, and Robert Matejka. This contact included frequent phone calls and emails from Mr. Fleming and, to a lesser degree, Mr. Smith and Mr. Matejka.

8.     On multiple occasions, Canada-based Akzo Ltd. representatives Denis Betthiaume and Jim Bignell told me or communicated to me that they had traveled to North

2

Carolina to conduct trials or testing or to perform analysis of the paint Akzo Ltd. sold to LP Ltd.

9. On multiple occasions, I attended technical meetings with Akzo Ltd. representatives at Akzo's offices in High Point, North Carolina. Akzo Ltd. representatives who were based in North Carolina, like Mr. Fleming and Mr. Smith, attended these meetings as did Akzo Ltd. representatives from Canada, including, but not limited to, Mr. Berthiaume, Mr. Bignell, Fern Gemus, and Jean Francois Caron. These technical meetings were held to discuss various aspects of the paint Akzo sold to LP Ltd.

10. Beginning in the late 1990s, I received more than 100 telephone calls in Canada from Akzo Ltd. representatives calling from North Carolina. Most of these calls were placed by Mr. Fleming, who was based in North Carolina. I believe that Mr. Fleming and other Akzo representatives in North Carolina also placed a large number of calls to LP Ltd. representative Barry Smith in Canada.

11. Without yet having the benefit of reviewing all of my emails, I believe that I received more than 100 emails that Akzo Ltd. representatives in North Carolina sent to me about the paint being used on CanExel® siding manufactured by LP Ltd. I estimate that I received or participated in at least 100 telephone calls with Akzo representatives in North Carolina about the paint being used on CanExel® siding manufactured by LP Ltd. I also received letters and facsimile communications from various Akzo representatives that originated from North Carolina.

12. Akzo Ltd. representative Rad Darby, who was based in North Carolina, signed the express warranty related to the Dual Resin M paint in North Carolina. Akzo

3

representative Robert Matejka sent drafts and the final version of the warranty from North Carolina to LP Ltd. representatives in Canada.

13.     Samples of CanExel® siding manufactured by LP Ltd. were retained from each LP Ltd. production shift. Akzo Ltd. sent many of those samples to North Carolina for testing. Akzo Ltd. used Akzo operations in High Point, North Carolina, as a central location to store and distribute CanExel® siding samples and retained specimens that used Dual Resin M paint to third-party testing companies in Arizona and Florida. After the third parties completed their testing, the CanExel® siding samples were sent back and stored by Akzo in High Point, North Carolina.

14.     The retained samples of CanExel® siding manufactured by LP Ltd. were also placed on "test fences" maintained by Akzo in North Carolina. To the best of my knowledge, Akzo continues to maintain these North Carolina test fences of CanExel® siding manufactured by LP Ltd. A typical test fence has hundreds of different siding samples being analyzed in exterior exposures.

15.     At various times during my employment, Akzo Ltd. representative Bob Smith traveled from North Carolina to Canada to market Akzo Ltd.'s products to LP Ltd. and solicit LP Ltd.'s continued business. Mr. Smith made this marketing trip about once a year. During his marketing visits, Mr. Smith would buy dinner and entertain me and other representatives of LP Ltd. Mr. Smith was often accompanied by other Akzo Ltd. representatives who traveled with him from North Carolina, including Mr. Fleming and Mr. Matejka.

4

16. From time to time, Akzo Ltd. representative Mr. Smith made telephone calls from North Carolina to speak with LP Ltd. representatives in Canada to ensure they were happy with Akzo Ltd.'s products and service.

17. On numerous occasions, representatives from Akzo Ltd. sent marketing materials from North Carolina to LP Ltd. representatives in Canada to solicit their business. These marketing materials, sent from Akzo's operations in High Point, North Carolina, included calendars, planners, and holiday cards in which Akzo Ltd. pledged to make charitable donations on behalf of LP Ltd.

18. In January or February 2007, I attended a meeting in Canada at which LP Ltd. asked Akzo Ltd. to reimburse LP Ltd. for the significant number of warranty claims that it had paid to customers for paint claims related to CanExel® siding. Rick Gray and Doug Gilliam, both working on behalf of Akzo Ltd., traveled from North Carolina to attend this meeting. Mr. Gray and Mr. Gilliam represented Akzo Ltd.'s interests as they attempted to negotiate and resolve the dispute between LP Ltd. and Akzo Ltd.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Bill Camp

Subscribed and sworn to before me
this 22nd day of November, 2012.

_____

Notary Public

1353021

5