# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF NORTH CAROLINA

Louisiana Pacific Corporation and Louisiana-Pacific Canada Ltd.,

Plaintiffs,

v.

Akzo Nobel Coatings, Inc., Akzo Nobel Coatings, Ltd, and John Does 1-10,

Defendants.

Court File No. 1:12-cv-625

**Affidavit of Shawn M. Raiter in Support of Louisiana Pacific's Memoranda in Opposition to Akzo Nobel Coatings, Ltd.'s Motions to Dismiss**

# EXHIBIT A

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF NORTH CAROLINA

| Louisiana-Pacific Corporation and Louisiana-Pacific Canada Ltd., | Court File No. 1:12-cv-625 |
|---|---|
| Plaintiffs, | **Complaint and Jury Demand** |
| v. | |
| Akzo Nobel Coatings, Inc., Akzo Nobel Coatings, Ltd, and John Does 1-10, | |
| Defendants. | |

Plaintiffs Louisiana-Pacific Corporation and Louisiana-Pacific Canada Ltd. bring this Complaint and state and allege as follows:

### Summary of Action

1. This action arises from the premature failure of paint Defendants sold for use on certain prefinished exterior siding Plaintiffs manufactured and sold to consumers primarily in Canada and Europe but also certain parts of the United States.

2. Because of the failures and deficiencies of paint supplied by Defendants, Plaintiffs have paid millions of dollars to resolve warranty claims made by their customers. Plaintiffs continue to receive and pay claims related to the deficiencies in at least some of Defendants' paint formulations and may receive additional claims in the future.

3. Pursuant to a written 15-year warranty Defendants provided for their paints and the resulting finish, as well as the applicable common and statutory law, Defendants are obligated to reimburse Plaintiffs for warranty payments Plaintiffs make to their customers.

1

Defendants are also obligated to reimburse Plaintiffs for additional damages and expenses related to the paint failures, including, but not limited to, damage to goodwill and reputation and the costs associated with handling warranty claims presented by consumers.

4.     Plaintiffs provided Defendants with notice of their claim and gave Defendants the opportunity to reimburse Plaintiffs without litigation.   Defendants refused, forcing Plaintiffs to bring this action.

## The Plaintiffs

5.     Louisiana Pacific Corporation is a publicly-held entity that maintains its principal place of business in Nashville, Tennessee.

6.     Louisiana Pacific Corporation operates facilities in Roaring River, North Carolina, and employs approximately 550 people in North Carolina.   Louisiana Pacific Corporation manufactures and sells many products, including prefinished siding used in the construction industry.

7.     Louisiana-Pacific Canada Ltd. is a foreign entity that maintains its principal place of business in Canada.   Louisiana Pacific Canada Ltd. manufactures and sells prefinished siding and other products used in the construction industry.

8.     Louisiana Pacific Corporation is the parent corporation of Louisiana-Pacific Canada Ltd. (collectively "Louisiana Pacific").

## The Defendants

9.     Defendant Akzo Nobel Coatings, Inc. is a publicly-held entity that is in the business, among other things, of advertising, warranting, manufacturing, and selling paint and coatings.

2

Case 1:12-cv-00625-WO-JLW    Document 36-1    Filed 11/26/12    Page 3 of 81

10. Akzo Nobel Coatings, Inc. is a Delaware corporation and maintains its principal place of business in Kentucky. Akzo Nobel Coatings, Inc. owns and operates facilities within this judicial district in High Point, North Carolina, and has operations elsewhere within North Carolina.

11. Upon information and belief, Akzo Nobel Coatings Ltd. is a foreign entity that does business, maintains operations, and employs people in High Point, North Carolina.

12. Akzo Nobel Coatings, Inc. and Akzo Nobel Coatings Ltd. (hereinafter collectively referred to as "Akzo") have acted in concert with each other with the respect to the actions and omissions alleged herein, are jointly and/or severally liable to Louisiana Pacific as joint venturers, or in the alternative, are subject to an agency relationship.

13. John Does 1-10 are other persons or entities that may have been involved in the design, formulation, sale, testing, and investigation of the paint and coatings sold to Louisiana Pacific for use on CanExel® siding. The identity of any John Does involved in the matters described herein is unknown despite Louisiana Pacific's best efforts to identify these parties.

### Jurisdiction and Venue

14. This Court has jurisdiction over the parties and the causes of action asserted herein pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.

15. The Court has jurisdiction over Defendants because Defendants have purposefully established contacts with the Middle District of North Carolina, do business in

3

the district, and because Louisiana Pacific's causes of action arose at least in part out of those contacts.

16. Venue is proper before this Court pursuant to 28 U.S.C. § 1391 because Defendants transact business in North Carolina and within this district, maintain offices and operations in this district, and a substantial part of the events giving rise to this lawsuit occurred in this district.

## Factual Background

17. Louisiana Pacific manufactures a siding product called CanExel®. CanExel® is a prefinished wood siding made from wood fiber, resin, and wax fused together under high pressure.

18. CanExel® is used in the construction industry and is primarily used as an exterior siding product. CanExel® is principally sold in Canada and Europe but was also sold in certain parts of the United States.

19. An advantage of CanExel® is that it is prefinished during manufacture. This prefinishing means that the siding is generally finished with basecoat and topcoat paint at Louisiana Pacific's manufacturing facility.

20. CanExel® is available in a variety of colors and is sold with a substantial warranty against paint failure. Subject to its terms and conditions, the CanExel® warranty provides up to a 15-year warranty on the finish of the siding.

21. Akzo manufactures and sells paint and other coatings used for a wide variety of applications. Akzo maintains a substantial operation within this judicial district in High Point, North Carolina.

4

Case 1:12-cv-00625-WO-JLW    Document 36-1    Filed 11/26/12    Page 5 of 81

22. Akzo is one of the world's largest manufacturers of wood coating products. Akzo employs a team of chemists and other technical personnel in North Carolina that are responsible for, among other things, developing, improving, marketing, and providing technical support for Akzo's wood coating products.

23. According to Akzo, its "state-of-the-art technology, equipment, and processes coupled with Akzo Nobel's team of chemists and engineers, has made Akzo Nobel an industry leader."

24. In the 1990's, Akzo specially developed, formulated, and manufactured paint it sold to Louisiana Pacific for use as finish on CanExel® siding.

25. Because the performance of the paint and finish on the siding is an important aspect of the siding's performance, Akzo and Louisiana Pacific worked closely together to develop a finishing system process that would provide a superior finish. This process included having Akzo representatives on site at Louisiana Pacific's facility during all production shifts as well as routine meetings and communication about the siding finishing process.

26. As part of this business relationship, Akzo promised that it would formulate and deliver paint to Louisiana Pacific that would, among other things: (1) adhere satisfactorily to the substrate; (2) not peel, blister, crack or check; and (3) not unduly change color from the effects of weathering.

27. Louisiana Pacific relied upon Akzo and its professed expertise as a leader in the wood coating industry to formulate and deliver paint to Louisiana Pacific that would,

5

Case 1:12-cv-00625-WO-JLW   Document 36-1   Filed 11/26/12   Page 6 of 81

among other things: (1) adhere satisfactorily to the substrate; (2) not peel, blister, crack or check; and (3) not unduly change color from the effects of weathering.

28. Louisiana Pacific had historically used softwoods to manufacture CanExel® siding and received an insignificant number of warranty claims from consumers related to issues with the paint supplied by Akzo.

29. In the early 2000s, Louisiana Pacific informed Akzo that reduced availability of softwoods required it to begin using hardwoods to manufacture CanExel® siding. Louisiana Pacific asked whether Akzo could provide paint that would perform satisfactorily on CanExel® siding made using hardwoods.

30. Louisiana Pacific relied upon Akzo's claimed expertise in the development, formulation, and manufacture of paints and coatings and reasonably expected that Akzo would properly develop, formulate, test, and manufacture paint fit for long-term exterior use on CanExel® siding.

31. Although the paint Akzo had supplied to Louisiana Pacific for many years had worked well on CanExel® siding, Akzo told Louisiana Pacific that a new paint formulation would be required. Louisiana Pacific relied on Akzo's expertise and reiterated to Akzo that: (1) it expected that the new paint would perform well for long-term exterior use on CanExel® siding; and (2) it would require Akzo to provide a 15-year warranty for the paint.

32. Akzo personnel in High Point, North Carolina, then began developing a new paint that it would supply to Louisiana Pacific for use on CanExel® siding. Akzo Nobel Coatings, Inc. assumed the primary responsibility for the technical aspects of identifying or developing the new paint.

6

33.     Akzo Nobel Coatings, Inc. and its representatives also began working on the development of a new paint to supply to Louisiana Pacific for use on CanExel® siding.

34.     During its transition from softwoods to hardwoods, Louisiana Pacific provided numerous samples of the new CanExel® siding to Akzo to allow it to choose or formulate an appropriate paint for this siding. Akzo personnel in North Carolina, including but not limited to Forest Fleming, analyzed the CanExel® siding samples made from hardwoods in North Carolina.

35.     Akzo ultimately recommended to Louisiana Pacific that a new dual-resin paint called Dual Resin M be used on CanExel® siding made from hard woods.

36.     During this reformulation process, Akzo repeatedly assured Louisiana Pacific that the new Dual Resin M paint it would supply for use on CanExel® siding would perform well and would: (1) adhere satisfactorily to the substrate; (2) not peel, blister, crack or check; and (3) not unduly change color from the effects of weathering.

37.     In numerous meetings and communications surrounding this reformulation, Akzo representatives Forest Fleming, Fern Gemus, Denis Berthiaume, and Jean-Francois Caron falsely represented to Louisiana Pacific that Akzo's new Dual Resin M paint formulation had been adequately tested, was fit for use, and would perform well on the new CanExel® siding.

38.     Many of these representations took place in North Carolina and Canada during technical committee meetings between Louisiana Pacific and Akzo on dates including, but not limited to, January 19, 2000; April 25, 2000; August 9, 2000; December 13,

7

Case 1:12-cv-00625-WO-JLW    Document 36-1    Filed 11/26/12    Page 8 of 81

2000; May 3, 2001; August 8, 2001; December 18, 2001; April 8, 2002; and February 18, 2003.

39. Although Akzo represented that the new Dual Resin M paint was a proven product, Akzo had not previously used this formulation for this type of application. Akzo, however, withheld this material information from Louisiana Pacific.

40. Akzo also repeatedly assured Louisiana Pacific in written communications that its new Dual Resin M paint formulation had been adequately tested and would perform well on the new CanExel® siding. Examples of such representations include Akzo employee Denis Berthiaume's letters to Barry Smith of Louisiana Pacific dated April 15, 2002 and July 17, 2002.

41. Akzo also repeatedly provided Louisiana Pacific with information that was represented as being test data that Akzo claimed to support a conclusion that its new Dual Resin M paint formulation had been adequately tested and would perform well on CanExel® siding. Examples of such representations include the March 19, 2002, "Test Fence Presentation" given by Akzo in High Point, North Carolina, to Louisiana Pacific representatives.

42. The limited testing Akzo had performed on the new Dual Resin M paint included "test fence" testing carried out by employees of Akzo Nobel, Inc. at Akzo's facilities in High Point, North Carolina.

43. Akzo Nobel Coatings, Inc. also commissioned third parties to conduct testing of the new Dual Resin M paint. Those test results indicated that the paint did not perform as well as the paint Akzo previously sold to Louisiana Pacific. Akzo representatives Forest

8

Case 1:12-cv-00625-WO-JLW    Document 36-1    Filed 11/26/12    Page 9 of 81

Fleming, Fern Gemus, Denis Berthiaume, Jean-Francois Caron, and potentially others concealed those results from Louisiana Pacific.

44. The third-party consultant Akzo hired for this paint formulation and testing indicated in a written report to Akzo that for performance closest to the paint that Akzo had previously supplied to Louisiana Pacific, which had performed well over many years, that Akzo should use "Cross Linker B" as part of the formula.

45. Akzo, however, did not use Cross Linker B and instead used Cross Linker A for the new Dual Resin M paint it provided to Louisiana Pacific.

46. The written report from the third-party consultant further indicated that Cross Linker A did not obtain sufficient crosslinking (or cure) if it was not heated above 370°F. The consultant therefore recommended that if Akzo was going to use Cross Linker A for the new Dual Resin M paint, that the paint must be cured above 370°F to achieve proper crosslinking and long-term durability. Akzo representatives Forest Fleming, Fern Gemus, Denis Berthiaume, Jean-Francois Caron, and potentially others concealed those results from Louisiana Pacific.

47. While concealing the third-party consultant's test results and recommendations, Akzo disregarded the consultant's advice and chose Cross Linker A instead of the Cross Linker B that had been shown to perform like the paint previously provided to Louisiana Pacific.

48. Despite using Cross Linker A in the new Dual Resin M paint it sold to Louisiana Pacific, Akzo did not tell Louisiana Pacific that the paint needed to be cured at a

9

Case 1:12-cv-00625-WO-JLW   Document 36-1   Filed 11/26/12   Page 10 of 81

temperature above 370°F as the third-party testing had indicated was necessary for long-term performance of the paint.

49. Akzo instead directed Louisiana Pacific to cure the paint between 340°F and 360°F, thereby assuring that the paint would not properly crosslink and would not achieve the cure and finish necessary for long-term performance on exterior siding.

50. The report referenced in the preceding paragraphs was commissioned by Akzo Nobel Coatings, Inc. Neither of the Akzo entities named as Defendants in this lawsuit ever provided this report or its contents to Louisiana Pacific.

51. Akzo subsequently disclaimed the validity of this third-party testing but did not perform or commission testing that it believed would have been appropriate to evaluate the new Dual Resin M paint it represented to Louisiana Pacific as being fit for long-term exterior use on CanExel® siding.

52. At about the same time Akzo was developing its new Dual Resin M paint formulation, Louisiana Pacific and Akzo updated some of their contractual agreements. In particular, the parties began updating and revising a 15-year warranty ("the Warranty") on the paint that Akzo provided to Louisiana Pacific for CanExel® siding.

53. The Warranty was drafted by Akzo representatives in High Point, North Carolina and discussions leading up to that Warranty took place, in part, in High Point, North Carolina.

54. Pursuant to the Warranty, Akzo provided a 15-year warranty on its paint and the resulting finish on CanExel® siding and agreed to reimburse Louisiana Pacific for claims Louisiana Pacific paid to its customers for paint failures.

10

Case 1:12-cv-00625-WO-JLW   Document 36-1   Filed 11/26/12   Page 11 of 81

55. Pursuant to the Warranty, Akzo promised that its paint would: (1) adhere satisfactorily to the substrate; (2) not peel, blister, crack or check; and (3) not unduly change color from the effects of weathering.

56. The Warranty describes various finishing and quality control processes and standards that were discussed and revised over time by the parties in person at various locations including High Point and Roaring River, North Carolina, and East River, Nova Scotia. Akzo had significant input in developing and describing those processes and standards by virtue of its employees' continuous presence at the Louisiana Pacific facility and through Akzo's research and testing efforts in High Point, North Carolina.

57. Akzo representatives Rad Darby and Fernand Gemus signed the Warranty in March 2003. Upon information and belief, Rad Darby was a North Carolina resident and signed the document in High Point, North Carolina.

58. Pursuant to the various contractual relationships, their ongoing business relationship, reliance on Akzo's representations, and the Warranty, Louisiana Pacific purchased millions of dollars of exterior paint from Akzo for CanExel® siding each year.

59. In making these ongoing purchases of the new Dual Resin M paint from Akzo, Louisiana Pacific relied upon the ongoing information and communications from Akzo that represented that the Akzo paint would perform well, was fit for use on CanExel® siding, and had been adequately tested for that application. Many of these representations took place in North Carolina and Canada during technical committee meetings between Louisiana Pacific and Akzo on dates including, but not limited to, August 13, 2003; January 15, 2004; June 10, 2004; September 22, 2004; March 22, 2005; July 26, 2005; September 21,

11

Case 1:12-cv-00625-WO-JLW Document 36-1 Filed 11/26/12 Page 12 of 81

2005; April 6, 2006; April 24, 2007; October 9, 2007; February 14, 2008; August 14, 2008; and December 2, 2008. Akzo representatives including Forest Fleming, Fern Gemus, Denis Berthiaume, and Jean-Francois Caron made these representations.

60. Akzo and its representatives, including Forest Fleming, Fern Gemus, Denis Berthiaume, and Jean-Francois Caron, falsely represented that the Akzo new Dual Resin M paint would perform well, was fit for use on CanExel® siding, and had been adequately tested for that application all in an effort to influence Louisiana Pacific to purchase and continue to purchase paint from Akzo.

61. Pursuant to the various contractual relationships, their ongoing business relationship, reliance on Akzo's representations, and the Warranty, Akzo representatives were present at the Louisiana Pacific manufacturing facility and monitored and provided input about the finishing and quality control processes on a daily basis.

62. Akzo representatives reviewed the Louisiana Pacific manufacturing and finishing processes on a daily basis and received CanExel® samples for quality control purposes at least once during each manufacturing shift.

63. Pursuant to the various contractual relationships, their ongoing business relationship, and the Warranty, Akzo sent CanExel® samples to its High Point, North Carolina, facility for testing and analysis. In addition, the representatives of Louisiana Pacific and Akzo routinely met for technical review meetings to discuss the paint and finishing process. Some of those meetings occurred in High Point, North Carolina.

12

Case 1:12-cv-00625-WO-JLW   Document 36-1   Filed 11/26/12   Page 13 of 81

64. After inducing Louisiana Pacific to purchase the new Dual Resin M paint, Akzo maintained test fences and performed technical review of CanExel® siding coated with the new Dual Resin M paint at its facilities in High Point, North Carolina.

65. To the extent Akzo now claims that Louisiana Pacific's manufacturing and finishing procedures differed from the processes described in the Warranty, Akzo was fully aware of the Louisiana Pacific processes because Akzo's employees were on-site at Louisiana Pacific, were aware of the processes being used, provided input and recommendations about those processes, did their own testing and quality control on CanExel® siding, and accepted those processes for purposes of the Warranty coverage.

66. Akzo, by virtue of the daily presence of its representatives at the Louisiana Pacific facility, its daily monitoring of the manufacturing processes, its independent quality control and analysis of CanExel® samples, and its ongoing communication with Louisiana Pacific about its manufacturing and finishing procedures, consented to and approved the processes used by Louisiana Pacific to manufacture and finish CanExel® siding.

67. Because the terms and conditions of the CanExel® warranties provided to consumers cover, as described in the actual language of the warranties themselves, certain types of paint failures, Louisiana Pacific began to receive warranty claims for the failure of Akzo Dual Resin M paint on CanExel® siding from its customers and others in the construction industry. Those claims primarily related to the premature failure of the Akzo Dual Resin M paint through cracking, peeling, blistering, or blushing (discoloration).

13

Case 1:12-cv-00625-WO-JLW   Document 36-1   Filed 11/26/12   Page 14 of 81

68. Certain colors of the Akzo Dual Resin M paint have caused an unusually high number of warranty claims for failures related to the cracking, peeling, blistering, and blushing of the paint finish on CanExel® siding.

69. Subsequent testing and analysis has shown that certain Akzo Dual Resin M paints will prematurely crack, peel, blister, or otherwise fail. Akzo's own testing has shown similar failures.

70. The paint failures seen with Akzo's new Dual Resin M paint are grossly disproportionate to the claims received for siding coated with Akzo's prior paint formulation, which used different resins and different formulations.

71. To-date, Louisiana Pacific has paid millions of dollars to resolve warranty claims submitted by customers in Canada, Europe, and the United States for the failure of Akzo Dual Resin M paint on CanExel® siding.

72. Louisiana Pacific continues to receive, and may in the future receive, additional customer warranty claims for the failure of Akzo Dual Resin M paint on CanExel® siding.

73. After it started receiving an unusual number of warranty claims for paint failures, Louisiana Pacific provided notice of this problem to Akzo and asked Akzo to determine the cause of the failures.

74. In various communications, many of which took place in or were sent from North Carolina, Akzo concealed from Louisiana Pacific the true reasons the paint was failing and claimed that it could not determine why some of the paint was failing prematurely.

14

Case 1:12-cv-00625-WO-JLW   Document 36-1   Filed 11/26/12   Page 15 of 81

75. Akzo in fact knew that its paint was failing because of problems with the new paint's formulation and concealed this information from Louisiana Pacific.

76. Akzo had consulted with third parties to conduct analysis of the paint failures and the results of that testing indicated that the formulation of the new Dual Resin M paint was to blame for the failures. In addition, the results indicated that Akzo had given Louisiana Pacific incorrect information about how to finish the paint during manufacture and that incorrect information led to a decrease in the paint's long-term durability.

77. Despite knowing that the paint formulation and the finish instructions it had given to Louisiana Pacific were the cause of the Dual Resin M paint failures, Akzo personnel including Forest Fleming, Fern Gemus, Denis Berthiaume, and Jean-Francois Caron concealed these material facts from Louisiana Pacific.

78. Relying upon Akzo's deceptive communications and concealment of the true reasons for the paint failure, Louisiana Pacific continued to do business with and purchase Dual Resin M and other paints from Akzo for use on CanExel® siding. These ongoing deceptive communications and concealment affected commerce in the state of North Carolina and caused damage to Louisiana Pacific in North Carolina.

79. Akzo's deceptive communications and active concealment of the true reasons for the paint failure prevented Louisiana Pacific from identifying the cause of the paint failures and its potential cause of action, thereby tolling the accrual of the various causes of action asserted herein.

80. Louisiana Pacific acted reasonably and with due diligence to identify the cause of the Dual Resin M paint failures.

15

Case 1:12-cv-00625-WO-JLW Document 36-1 Filed 11/26/12 Page 16 of 81

81. Ultimately, Akzo representatives indicated that changes to the formulation of the Akzo paint had caused performance problems for certain of the Dual Resin M paints sold to Louisiana Pacific.

82. Louisiana Pacific has complied with all material terms of the Warranty and is entitled to reimbursement from Akzo for the CanExel® paint and finish failures.

83. By manufacturing and supplying paint to Louisiana Pacific that failed prematurely and well within warranty, Akzo directly and proximately caused Louisiana Pacific to suffer reasonably foreseeable damages including, without limitation:

a) The costs Louisiana Pacific has incurred, and will incur in the future, to resolve warranty claims brought by customers;

b) The costs Louisiana Pacific incurred to investigate, inspect, and test the defective paint;

c) The costs Louisiana Pacific incurred to investigate, inspect, and adjust the warranty claims presented by customers;

d) The damage to Louisiana Pacific's goodwill, reputation, and business caused by the failure of the paint provided by Akzo; and

e) The attorneys' fees, costs, and expenses associated with this action and Akzo's refusal to reimburse Louisiana Pacific for the damage caused by the defective Akzo paint.

84. Louisiana Pacific provided reasonable notice to Akzo of the defects and problems with the paint by directly contacting Akzo and by tendering to Akzo a request for reimbursement of the claims Louisiana Pacific has received from third parties for expenses, losses, or damages incurred as a result of Akzo paint failures. Akzo did not pay the claims, leaving Louisiana Pacific to pay the third-party claims.

16

85. To-date, Louisiana Pacific has paid millions of dollars to resolve consumer warranty claims caused by paint failures and continues to receive and honor consumer warranty claims for the failure of Akzo's paint.

86. Before the filing of this lawsuit, the parties entered into a Tolling and Standstill Agreement through which the parties agreed to toll the statute of limitations, statutes of repose, and laches defenses. Louisiana Pacific recently terminated that agreement to bring this action.

## Count I

## (Fraudulent Inducement)

87. Louisiana Pacific repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

88. Based on the conduct described herein, Akzo made false representations and concealed information about the testing and analysis performed on the new Dual Resin M paint and its fitness for use for long-term exterior use on CanExel® siding. These were material facts that Akzo had a duty to disclose to Louisiana Pacific before selling the paint to Louisiana Pacific.

89. Akzo personnel, including Forest Fleming, Fern Gemus, Denis Berthiaume, and Jean-Francois Caron knew these representations were false and / or made them recklessly without knowledge of their truth and made the false representations and concealed information with the intent to deceive Louisiana Pacific.

90. Akzo knew that Louisiana Pacific would not purchase the Dual Resin M paint and would not enter into the various agreements described herein if it had been told the

17

Case 1:12-cv-00625-WO-JLW  Document 36-1  Filed 11/26/12  Page 18 of 81

truth about the lack of adequate testing and disregard of the third-party consultant's findings about the Dual Resin M paint.

91. Louisiana Pacific justifiably relied on Akzo's representations about the claimed adequacy of the new Dual Resin M paint, that this was a proven paint formula, and that Akzo had carried out adequate testing and analysis to confirm that the paint was fit for long-term exterior use on CanExel® siding.

92. Based on its justifiable reliance on Akzo's misrepresentations and concealment of material information, Louisiana Pacific entered into business transactions with Akzo related to the purchase of the new Dual Resin M paint and entered into the contracts with Akzo referenced herein.

93. Louisiana Pacific would not have purchased the new Dual Resin M paint and would not have entered into contracts with Akzo if Akzo had not made misrepresentations and concealed material information about the claimed adequacy of the new Dual Resin M paint, that it was a proven paint formula, and that Akzo had carried out adequate testing and analysis to confirm that the paint was fit for long-term exterior use on CanExel® siding.

94. Despite the exercise of due diligence and reasonable care, Louisiana Pacific did not discover Akzo's fraud because of Akzo's active, ongoing concealment of the true cause of the paint failures, as described in this complaint.

95. As a direct, foreseeable, and proximate result of Akzo's fraudulent inducement, Louisiana Pacific has suffered damages, as detailed above, in an amount in excess of $75,000 to be determined at trial. Additionally, Louisiana Pacific is entitled to rescission or reformation of the contract terms.

18

Case 1:12-cv-00625-WO-JLW   Document 36-1   Filed 11/26/12   Page 19 of 81

## Count II

## (Breach of Express Warranty)

96.     Louisiana Pacific repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

97.     Akzo expressly warranted that the paint it supplied for use on Louisiana Pacific's prefinished CanExel® siding would, among other things: (1) adhere satisfactorily to the substrate; (2) not peel, blister, crack or check; and (3) not unduly change color from the effects of weathering.

98.     Akzo also expressly warranted that its paint would be: (1) free from defects in design, materials, and workmanship; (2) would conform strictly to its own specifications; and (3) would be fit and sufficient for use on Louisiana Pacific's prefinished CanExel® siding.

99.     Akzo breached these express warranties by supplying Dual Resin M paint that did not properly adhere to the substrate, cracked, peeled, blistered, checked, and faded prematurely when applied to CanExel® siding.

100.     Louisiana Pacific has provided notice of these breaches and has complied with any applicable notice requirement.

101.     As a direct result of the failures and defects in Akzo's paint, Louisiana Pacific has paid warranty claims brought by its customers and consumers. Louisiana Pacific has tendered those claims to Akzo for reimbursement under the parties' various agreements.

102.     Akzo has refused to honor its express warranties and refuses to reimburse Louisiana Pacific for claims paid as a result of the failures and defects in Akzo's Dual Resin M paint.

19

Case 1:12-cv-00625-WO-JLW   Document 36-1   Filed 11/26/12   Page 20 of 81

103. As a direct, foreseeable, and proximate result of Akzo's breach of express warranties, Louisiana Pacific has suffered damages, as detailed above, in an amount in excess of $75,000 to be determined at trial.

## Count III

## (Breach of Implied Warranty of Merchantability)

104. Louisiana Pacific repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

105. Akzo impliedly warranted to Louisiana Pacific that the paint supplied to Louisiana Pacific would be fit for the ordinary use of exterior paint applied to prefinished siding.

106. Akzo breached the implied warranty of merchantability by supplying Dual Resin M paint that was defective and unfit for its ordinary use when applied as an exterior finish on CanExel® siding.

107. As a direct, foreseeable, and proximate result of Akzo's breach of warranty, Louisiana Pacific has suffered damages, as detailed above, in an amount in excess of $75,000 to be determined at trial.

## Count IV

## (Breach of Implied Warranty of Fitness for a Particular Purpose)

108. Louisiana Pacific repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

20

Case 1:12-cv-00625-WO-JLW   Document 36-1   Filed 11/26/12   Page 21 of 81

109. Akzo impliedly warranted to Louisiana Pacific that the paint supplied to Louisiana Pacific would be fit for its particular purpose of being applied to CanExel® siding as an exterior paint.

110. Akzo was aware that Louisiana Pacific would use the paint to finish CanExel® siding and that the paint needed to meet certain performance requirements for use as an exterior finish on siding that was sold with a lengthy warranty to consumers.

111. Louisiana Pacific relied on Akzo's skill and judgment to supply paint that met those requirements. Akzo was aware that Louisiana Pacific was relying on Akzo's skill and judgment to supply paint that met the requirements for use on exterior siding sold to consumers with a lengthy warranty.

112. Akzo breached its implied warranty of fitness for a particular purpose because the Dual Resin M paints it supplied were defective and not fit for Louisiana Pacific's purpose of applying the paint to CanExel® siding for exterior use.

113. As a direct, foreseeable, and proximate result of Akzo's breach of warranty, Louisiana Pacific has suffered damages, as detailed above, in an amount in excess of $75,000 to be determined at trial.

### Count V

### (Breach of Contract)

114. Louisiana Pacific repeats and realleges the allegations of the foregoing as if fully set forth herein.

115. Pursuant to the various written and other agreements between Louisiana Pacific and Akzo, Akzo agreed to supply Louisiana Pacific with paint that would, among

21

Case 1:12-cv-00625-WO-JLW Document 36-1 Filed 11/26/12 Page 22 of 81

other things, adhere satisfactorily to the substrate and would not peel, blister, crack, check, or change color within the warranted period.

116.    Akzo breached its contract with Louisiana Pacific by failing to supply paint that conformed to or met the contract terms and requirements.

117.    As a direct, foreseeable, and proximate result of Akzo's breach of the parties' contracts and agreements, Louisiana Pacific has suffered damages, as detailed above, in an amount in excess of $75,000 to be determined at trial.

## Count VI

### (Declaratory Judgment)

118.    Louisiana Pacific repeats and realleges the allegations of the foregoing as if fully set forth herein.

119.    A real and justiciable controversy exists among the parties with respect to their rights and obligations under the written agreements discussed herein. Pursuant to 28 U.S.C. § 2201, the Court has authority to declare the rights and obligations of Louisiana Pacific and Akzo with respect to this controversy.

120.    Louisiana Pacific seeks a declaration, among other things, that Akzo is obligated to reimburse Louisiana Pacific for past and future warranty claims that relate to or arise from warranted failures of Akzo Dual Resin M paint.

121.    Louisiana Pacific also seeks a declaration that it has complied with the terms of the Warranty. Louisiana Pacific further seeks a declaration that to the extent Akzo now claims that Louisiana Pacific's manufacturing and finishing procedures differed from the processes described in the Warranty, Akzo was fully aware of the Louisiana Pacific processes

22

because Akzo's employees were on-site at Louisiana Pacific, were aware of the processes being used, provided input and recommendations about those processes, did their own testing and quality control on CanExel® siding, and accepted those processes for purposes of the Warranty coverage, thereby reforming and amending the Warranty to reflect the parties' agreement and course of dealing.

122. Louisiana Pacific also seeks a declaration that certain aspects of the Akzo express Warranty are unenforceable under the applicable law and therefore cannot be enforced. Those provisions include but are not limited to, any purported attempt to limit the amount owed by Akzo under the Warranty and any purported disclaimers of claims or remedies.

123. Louisiana Pacific also seeks a declaration that based on the circumstances alleged in this complaint, all or parts of the Akzo express Warranty are void or subject to rescission because it fails of its essential purpose.

124. Louisiana Pacific also seeks a declaration that certain aspects of the Akzo express Warranty are vague, ambiguous, unconscionable, or unenforceable under the applicable law and therefore cannot be enforced or must be construed against Akzo.

125. Louisiana Pacific also seeks a declaration regarding the interplay of the various contractual documents, invoices, purchase and sales orders, and their attendant terms and conditions to determine whether certain provisions conflict with each other, and if so, what terms will be applied to this dispute.

23

Case 1:12-cv-00625-WO-JLW    Document 36-1    Filed 11/26/12    Page 24 of 81

Count VII

(Unfair and Deceptive Trade Practices Act)

126. Louisiana Pacific repeats and realleges the allegations of the foregoing as if fully set forth herein.

127. Akzo's actions as described herein, which are incorporated by reference, are in and affecting commerce in North Carolina, and are unfair and deceptive practices constituting violations of N.C. Gen. Stat. § 75-1, *et seq.*

128. By engaging in the conduct described herein, including making numerous representations and omissions about the fitness of its Dual Resin M paint for use on CanExel® siding and the nature and adequacy of Akzo's testing and research on that paint for such a use, Akzo engaged in deceptive practices under the N.C. Gen. Stat. § 75-1, *et seq.* by engaging in conduct that had the capacity or tendency to deceive an entity like Louisiana Pacific and created the likelihood of deception.

129. Louisiana Pacific relied on Akzo's unfair and deceptive practices in deciding to apply, purchase, and continue to purchase Akzo's Dual Resin M paint for use on CanExel® siding.

130. Akzo's unfair and deceptive practices included, but were not limited to, its ongoing statements and representations about the formulation and suitability of its Dual Resin M paint for use on CanExel® siding and the nature and adequacy of Akzo's testing and research on that paint for such a use.

131. Akzo made these unfair and deceptive communications through its representatives, including but not limited to, Forest Fleming, Fern Gemus, Denis

24

Case 1:12-cv-00625-WO-JLW   Document 36-1   Filed 11/26/12   Page 25 of 81

Berthiaume, and Jean-Francois Caron during the technical meetings between the parties previously described herein and in various other written and verbal communications.

132.    These unfair and deceptive representations and communications were relied upon by Louisiana Pacific and caused it to continue to purchase paint from Akzo that it would not have purchased had Akzo not engaged in conduct that violated N.C. Gen. Stat. § 75-1, *et seq.*

133.    Through its ongoing representations, omissions, and assurances about the suitability of its new Dual Resin M paint formulation for use on CanExel® siding and about the adequacy of the testing and analysis of the paint for such use, Akzo fraudulently concealed the cause of the problems with its paint and precluded Louisiana Pacific from identifying the cause of the paint failures and its potential cause of action against Akzo.

134.    As a direct and proximate result of Akzo's conduct, Louisiana Pacific has been and continues to be damaged in North Carolina through the loss of business, damage to the competitive advantages it has earned in the marketplace, damage to its goodwill and reputation, and loss of money paid to resolve consumer claims.

135.    As a result of Akzo's violations of N.C. Gen. Stat. § 75-1, *et seq.*, Louisiana Pacific is entitled to actual damages trebled pursuant to statute, attorneys' fees and costs, injunctive relief, punitive damages, and such other relief the Court deems fair and just.

### Jury Demand

Louisiana Pacific hereby demands trial by jury on all claims and issues permitted by law.

25

Case 1:12-cv-00625-WO-JLW   Document 36-1   Filed 11/26/12   Page 26 of 81

Prayer for Relief

WHEREFORE, Louisiana Pacific prays for relief against Defendants as follows:

1.  Compensation for damages suffered by Plaintiffs;

2.  Award of treble damages, punitive damages, and all other relief possible under N.C. Gen. Stat. § 75-1, *et seq*;

3.  Award of reasonable attorneys' fees and costs and disbursements incurred herein;

4.  Enjoining Defendants from denying the tender of future claims for paint failures and directing Defendants to reimburse Plaintiffs for such claims;

5.  Declaring the rights and obligations of the parties under the various agreements; and

6.  Such other and further relief the Court deems just and equitable.

Dated: June 22, 2012

**Cranfill Sumner & Hartzog LLP**

/s/Richard T. Boyette
Richard T. Boyette, NC State Bar #7623
P.O. Box 27808
Raleigh, NC 27611-7808
(Tel) 919-863-8729
(Fax) 919-863-3519
E-mail: rtb@cshlaw.com

**Larson · King, LLP**
Mark A. Solheim, MN State Bar #213226
Shawn M. Raiter, MN State Bar #240424
2800 Wells Fargo Place
30 East 7th Street
St. Paul, MN 55101
(Tel) 651-312-6500
(Fax) 651-312-6618
E-mail: sraiter@larsonking.com

***Attorneys for Plaintiffs Louisiana Pacific Corporation and Louisiana Pacific Canada Ltd.***

26

**Cheryl Baldwin**

| | |
|---|---|
| **From:** | ECF@ncmd.uscourts.gov |
| **Sent:** | Thursday, July 05, 2012 4:00 PM |
| **To:** | ecf@ncmd.uscourts.gov |
| **Subject:** | Activity in Case 1:12-cv-00625-UA-LPA LOUISIANA-PACIFIC CORPORATION et al v. AKZO NOBEL COATINGS, INC. et al SEALED Document |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

## U.S. District Court

## North Carolina Middle District

## Notice of Electronic Filing

The following transaction was entered by BOYETTE, RICHARD on 7/5/2012 at 3:59 PM EST and filed on 7/5/2012

**Case Name:** LOUISIANA-PACIFIC CORPORATION et al v. AKZO NOBEL COATINGS, INC. et al

**Case Number:** 1:12-cv-00625-UA-LPA

**Filer:**

**Document Number:** 4

**Docket Text:**
SEALED DOCUMENT *Complaint and Jury Demand* by Plaintiffs LOUISIANA-PACIFIC CANADA LTD., LOUISIANA-PACIFIC CORPORATION. (BOYETTE, RICHARD)

**1:12-cv-00625-UA-LPA Notice has been electronically mailed to:**

RICHARD T. BOYETTE     rtb@cshlaw.com, aflores@cshlaw.com, ckh@cshlaw.com, lollari@cshlaw.com, mihnat@cshlaw.com

**1:12-cv-00625-UA-LPA Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1091045209 [Date=7/5/2012] [FileNumber=1544657-0]

1

[07f85237ee869984593bca5425dcd5f55317bd045c13ae2877b47c9166590fe3c907
1227d932f31782e8b9ae5a3812071ca2dc54342a2d1b05bb7f53a78c0621]]

2

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF NORTH CAROLINA

Louisiana Pacific Corporation and Louisiana-Pacific Canada Ltd.,

Court File No. 1:12-cv-625

Plaintiffs,

v.

Akzo Nobel Coatings, Inc., Akzo Nobel Coatings, Ltd, and John Does 1-10,

Defendants.

**Affidavit of Shawn M. Raiter in Support of Louisiana Pacific's Memoranda in Opposition to Akzo Nobel Coatings, Ltd.'s Motions to Dismiss**

# EXHIBIT B

February 15, 1996



**AKZO NOBEL**

TECHNICAL DATA SHEET
FOR
ABTco, Inc,
Roaring River, NC

**MATERIAL DATA**

MATERIAL LF LOCKSIDE SAND BASECOAT    CODE NO. 661-D5-093

PRODUCT TYPE    PIGMENTED ACRYLIC LATEX COATING

CHEMICAL CLASS OF SOLIDS: ACRYLIC/MELAMINE RESIN
PRIMARY, INERT PIGMENT

SOLVENTS  ISOBUTYL ALCOHOL, TEXANOL, BUTYL CELLOSOLVE

USE    BASECOAT

**PHYSICAL DATA**

COLOR TAN GLOSS 40 - 50  60° BLACK GLASS  WT/GAL 11.38- 11.88

SOLIDS BY VOLUME 43.09-47.09  SOLIDS BY WT 58.39-63.39  pH 9.6-9.8

VISCOSITY METHOD #3 ZAHN  TEMP. 77 °F TIME OR UNITS 15-18 SEC

VOC 0.71  POUNDS PER GALLON  FLASH POINT >200°  F SETA

FINENESS OF GRIND 5.5

**APPLICATION DATA**

SURFACE PRIMED HARDBOARD  METHOD OF APPLICATION SOCK/CC

RECOMMENDED REDUCER WATER

RECOMMENDED REDUCTION RATE AS DESIRED

APPLICATION VISCOSITY AS RECEIVED

SUGGESTED CLEAN UP SOLVENT WATER

**CURE SCHEDULE**
AIR FLASH    LINE CONDITIONS

CURE TYPE AND TEMPERATURE HVHA & INFRA RED

FINAL SURFACE TEMPERATURE 300°F  (RECOMMENDED)

COOL TO STACK SURFACE TEMPERATURE 120°F BST (MAXIMUM)

COMMENTS DO NOT FREEZE. AGITATE BEFORE USE.

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Louisiana Pacific Corporation and Louisiana-Pacific Canada Ltd., | Court File No. 1:12-cv-625 |
| Plaintiffs, | |
| v. | **Affidavit of Shawn M. Raiter in Support of Louisiana Pacific's Memoranda in Opposition to Akzo Nobel Coatings, Ltd.'s Motions to Dismiss** |
| Akzo Nobel Coatings, Inc., Akzo Nobel Coatings, Ltd, and John Does 1-10, | |
| Defendants. | |

# EXHIBIT G



**AKZO NOBEL**

November 9, 2000

Mr. Barry Smith
ABT Canada Ltd.
East River Plant
Post Office Box 2050
Chester, Nova Scotia Canada  B0J 1J0

Dear Mr. Smith:

Several anticipated changes in your hardboard siding product affect Akzo Nobel Coatings current exterior siding warranty.

Changes under consideration are wood species composition change and latex resin change. These changes must undergo extensive testing and documentation before Akzo Nobel Coatings can issue a covering warranty.

Akzo Nobel's minimum testing for these changes is as follows:

1.  <u>On Coated Substrate</u>
    Two years Emmaqua Testing using the Soak-Freeze-Thaw (D5722) technique, with supporting data from multiple test fences and weatherometer data.

2.  <u>Substrate Testing</u>
    Testing of board quality specifications by an outside laboratory using ASTM D 1037 "Evaluating the Properties of Wood – Base Fiber and Particle Panel Materials" and providing a set of comparative specifications versus the prior approved wood species composition to Akzo Nobel for review.

Providing summarized testing data generated by ABT Canada on board properties would also be helpful.

If I can be of additional help, please call me at 336-801-0872.

Sincerely,

Robert C. Matejka
Warranty Coordinator

C:    G. Currier
      B. Smith
      F. Gemus
      J. Caron
      F. Fleming

*1-only*

(Reliance)

Akzo Nobel Coatings
1431 Progress Avenue
P.O. Box 2124
High Point, NC 27261
Tel (336) 841-5111
FAX (336) 883-5111

*Answer to Questions #7 & 10 & 11*

*Scan/Email to Dews & FedEx. ZZ 5/25/11*

Louisiana Pacific Corporation and Louisiana-Pacific Canada Ltd.,

Court File No. 1:12-cv-625

Plaintiffs,

v.

Akzo Nobel Coatings, Inc., Akzo Nobel Coatings, Ltd, and John Does 1-10,

Defendants.

**Affidavit of Shawn M. Raiter in Support of Louisiana Pacific's Memoranda in Opposition to Akzo Nobel Coatings, Ltd.'s Motions to Dismiss**

# EXHIBIT H



**AKZO NOBEL**

February 12, 2001

Mr. Barry Smith
Louisiana Pacific Corporation
East River Plant
Post Office Box 2010
Chester, Nova Scotia Canada  B0J 1J0

Dear Mr. Smith:

After careful review of the requirements for total film thickness required by our 15 and 25 year exterior siding warranties and Appendix H requirements for documenting film thickness, Akzo Nobel Coatings is submitting this cover letter as an approved operational protocol. This protocol replaces the original Appendix H and has an effective date of February 12, 2001.

If additional questions arise, please call me at 336-801-0872.
Sincerely,

Robert C. Matejka
Warranty Coordinator

C:     Bob Smith       Forest Fleming
        Fern Gemus     Denis Berthiaume
        Rad Darby       Gerry Currier
        J. Caron

*new/revised*

(Reliance)

Akzo Nobel Coatings Inc
1431 Progress Avenue
P.O. Box 2124
High Point, NC 27261
Tel. 336-841-3111
FAX 336-802-7525

Appendix H

Effective Date: February 12, 2001

Protocol for Sampling, Microtome Preparation; Measuring Technique and
Recording of Results

*EVERY 2ND HOUR* The Louisiana Pacific coating line operators or technical staff will hourly measure the curtain coat basecoat and topcoat application by foil method and record results.

1. The Louisiana Pacific grader randomly chooses a #1 board for film thickness measurement during the 2nd hour of production and every eight hours thereafter.

2. The Louisiana Pacific grader randomly chooses a #1 board every four hours of production as a sample to be retained by Louisiana Pacific.

   *3 1/4"*

3. A 1" x 2 1/8" sample representing the average texture profile is cut out of each master sample chosen a least 2 feet from either end of the board. For grooved boards, the sample has to include part of one groove.

4. A microtome is prepared by sanding and polishing the 1" x 2 1/8" sample.

5. Louisiana Pacific measures each microtome and then turns it over to Akzo Nobel Coatings for review. Akzo Nobel Coatings then returns the microtome to Louisiana Pacific for storage.

6. Louisiana Pacific will supply Akzo Nobel Coatings in St. Jerome, Quebec with film thickness measurements on a calendar monthly basis. If the warranty requirements are not met, Akzo Nobel Coatings reserves the right to require testing by Louisiana Pacific on other sample retains.

   *THEY HAVE REVIEWED OUR DATA ALREADY*

   *E Mail*

7. Louisiana Pacific and Akzo Nobel Coatings agree that the dry film thickness can be designated by evaluating the dry film thickness of seven peak areas on textured board and then averaging five values of peak readings after disregarding the "high" and "low" peak readings of the seven measurements providing that no value lower than 1.2 mils is used in the averaging calculation. Such averaging techniques apply only to representative peak readings on textured boards; flat, valley and shoulder readings are not to be included in the designated dry film thickness number previously described, but flat, valley and shoulder areas must meet the minimum film thickness requirements of the warranty as described in Appendix B.

8.  The results of the dry film thickness evaluation must be kept in a logbook by Louisiana Pacific along with the production date and board back stamp number for the duration of the warranty.

9.  All of the above is in reference to the best method of determination toward achieving the required dry film thickness with minimum testing requirements. However, in the event of a claim relating to dry film thickness requirement, the criterion for deciding if the required film layer is adequate, would be decided from a review of the retained samples held both by Akzo Nobel Coatings and Louisiana Pacific from the actual production run in question.

    If changes are necessary for the protocol, Akzo Nobel Coatings can do so by attachment of a cover letter to this 15-year warranty. For additional reference, see ASTM D5235-92 "Standard Test Method for Microscopical Measurement of Dry Film Thickness of Coatings on Wood Products".

Louisiana Pacific Corporation and Louisiana-Pacific Canada Ltd.,

Court File No. 1:12-cv-625

Plaintiffs,

v.

Akzo Nobel Coatings, Inc., Akzo Nobel Coatings, Ltd, and John Does 1-10,

Defendants.

**Affidavit of Shawn M. Raiter in Support of Louisiana Pacific's Memoranda in Opposition to Akzo Nobel Coatings, Ltd.'s Motions to Dismiss**

# EXHIBIT I

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Louisiana-Pacific Corporation and<br>Louisiana-Pacific Canada Ltd., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| | )  Case No.: 1:12-cv-625 |
| vs. | )<br>) |
| Akzo Nobel Coatings, Inc., Akzo Nobel<br>Coatings, Ltd., and John Does 1-10, | )<br>)<br>) |
| Defendants. | )<br>) |

## AKZO NOBEL COATINGS, INC.'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant Akzo Nobel Coatings, Inc. ("ANCI"), by and through its attorneys, files this Answer and Affirmative Defenses to Plaintiffs' Complaint and Jury Demand ("Complaint").[1]

### Summary of the Action

1. To the extent the allegations contained in Paragraph 1 of the Complaint are directed at ANCI, ANCI denies the allegations.

2. To the extent the allegations contained in Paragraph 2 of the Complaint are directed at ANCI, ANCI denies the allegations.

3. To the extent the allegations contained in Paragraph 3 of the Complaint are directed at ANCI, ANCI denies the allegations.

---

[1] In addition to ANCI, Plaintiffs purport to sue Akzo Nobel Coatings Ltd. ("ANCL"). ANCI is a separate corporation and is answering the Complaint on its own behalf. ANCI is not acting in any capacity for ANCL.

4. To the extent the allegations contained in Paragraph 4 of the Complaint are directed at ANCI, ANCI denies the allegations.

**The Plaintiffs**

5. Upon information and belief, ANCI admits that Louisiana-Pacific Corporation is a publicly-held entity. ANCI states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 5 of the Complaint and, therefore, denies the same.

6. Upon information and belief, ANCI admits that Louisiana-Pacific Corporation operates a facility in Roaring River, North Carolina. ANCI states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 6 of the Complaint and, therefore, denies the same.

7. Upon information and belief, ANCI admits that Louisiana-Pacific Canada Ltd. is a foreign entity. ANCI states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 7 of the Complaint and, therefore, denies the same.

8. Upon information and belief, ANCI admits that Louisiana-Pacific Corporation is the parent corporation of Louisiana-Pacific Canada Ltd. ANCI states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 8 of the Complaint and, therefore, denies the same.

2

## The Defendants

9. ANCI admits that it manufactures and sells paints and coatings. ANCI denies the remaining allegations in Paragraph 9 of the Complaint.

10. ANCI admits that it is a corporation organized and existing under the laws of the State of Delaware. ANCI further admits that the principal place of business of its Wood Finishes & Adhesives business unit is Louisville, Kentucky. ANCI further admits that it has offices in High Point, North Carolina. ANCI denies the remaining allegations in Paragraph 10 of the Complaint.

11. ANCI admits that ANCL is a foreign entity, but denies the remaining allegations contained in Paragraph 11 of the Complaint.

12. Paragraph 12 of the Complaint contains legal conclusions and assertions of law to which no response is required. To the extent any response is deemed necessary, ANCI denies the allegations contained in Paragraph 12 of the Complaint.

13. ANCI states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 13 of the Complaint and, therefore, denies the same.

## Jurisdiction and Venue

14. Paragraph 14 of the Complaint contains legal conclusions and assertions of law to which no response is required. To the extent any response is deemed necessary, ANCI denies the allegations contained in Paragraph 14 of the Complaint.

15. Paragraph 15 of the Complaint contains legal conclusions and assertions of law to which no response is required. To the extent a response is deemed necessary,

3

ANCI admits it does business in North Carolina. ANCI denies the remaining allegations contained in Paragraph 15 of the Complaint.

16. Paragraph 16 of the Complaint contains legal conclusions and assertions of law to which no response is required. To the extent a response is deemed necessary, ANCI admits that it does business in North Carolina and has offices in High Point, North Carolina. ANCI denies the remaining allegations contained in Paragraph 16 of the Complaint.

**Factual Background**

17. ANCI admits that Louisiana-Pacific Canada Ltd. manufactures a siding product called CanExel®. ANCI further admits that, at times, CanExel® was comprised of, in part, ground wood fibers, resin, and wax. ANCI states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 17 of the Complaint and, therefore, denies the same.

18. ANCI admits CanExel® is used in the construction industry as an exterior siding. ANCI is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 18 of the Complaint and, therefore, denies the same.

19. ANCI admits that, at times, CanExel's® finish included a basecoat and topcoat coating applied at Louisiana-Pacific Canada Ltd.'s facility in Nova Scotia. ANCI states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 19 of the Complaint and, therefore, denies the same.

4

20. ANCI admits that, at times, CanExel® was available in a variety of colors. ANCI states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 20 of the Complaint and, therefore, denies the same.

21. ANCI admits it manufactures and sells various paint and coating products. ANCI further admits it has offices in High Point, North Carolina. To the extent the remaining allegations contained in Paragraph 21 of the Complaint are directed at ANCI, ANCI denies the remaining allegations.

22. ANCI admits it manufactures wood coating products and has employees in North Carolina. To the extent the remaining allegations contained in Paragraph 22 of the Complaint are directed at ANCI, ANCI denies the remaining allegations.

23. ANCI admits that Paragraph 23 of the Complaint refers to and purports to quote, characterize, and/or paraphrase an unidentified document or written material. ANCI states that the complete and precise content of the report can be ascertained from the document or written material itself. ANCI denies any remaining allegations in Paragraph 23 of the Complaint.

24. To the extent the allegations contained in Paragraph 24 of the Complaint are directed at ANCI, ANCI denies the allegations.

25. ANCI admits that, at times, it had a representative present at Louisiana-Pacific Canada Ltd.'s manufacturing facility in East River, Nova Scotia during the production of CanExel® siding. To the extent the remaining allegations contained in Paragraph 25 of the Complaint are directed at ANCI, ANCI denies the allegations.

5

26. To the extent the allegations contained in Paragraph 26 of the Complaint are directed at ANCI, ANCI denies the allegations.

27. To the extent the allegations contained in Paragraph 27 of the Complaint are directed at ANCI, ANCI denies the allegations.

28. ANCI admits that, at times, Louisiana-Pacific Canada Ltd. used softwoods to manufacture CanExel® siding. ANCI further admits Louisiana-Pacific Canada Ltd. received warranty claims related to its CanExel® siding manufactured with softwoods. ANCI states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 28 of the Complaint and, therefore, denies the same.

29. To the extent the allegations contained in Paragraph 29 of the Complaint are directed at ANCI, ANCI denies the allegations.

30. To the extent the allegations contained in Paragraph 30 of the Complaint are directed at ANCI, ANCI denies the allegations.

31. ANCI admits that, at times, ANCL supplied coating for use on CanExel® siding. To the extent the remaining allegations contained in Paragraph 31 of the Complaint are directed at ANCI, ANCI denies the allegations.

32. To the extent the allegations contained in Paragraph 32 of the Complaint are directed at ANCI, ANCI denies the allegations.

33. To the extent the allegations contained in Paragraph 33 of the Complaint are directed at ANCI, ANCI denies the allegations.

6

34. ANCI admits that Louisiana-Pacific Canada Ltd. provided samples of CanExel® siding manufactured with hardwood to ANCI. ANCI further admits that CanExel® hardwood siding samples were sent to North Carolina for analysis by ANCI employees, including Forest Fleming. To the extent the remaining allegations contained in Paragraph 34 of the Complaint are directed at ANCI, ANCI denies the allegations.

35. To the extent the allegations contained in Paragraph 35 of the Complaint are directed at ANCI, ANCI denies the allegations.

36. ANCI admits that ANCL sold Dual Resin M to Louisiana-Pacific Canada Ltd. for use on CanExel® hardwood siding. To the extent the remaining allegations contained in Paragraph 36 of the Complaint are directed at ANCI, ANCI denies the allegations.

37. ANCI admits that ANCI, ANCL, and Louisiana-Pacific Canada Ltd. had meetings and communications regarding Dual Resin M. To the extent the remaining allegations contained in Paragraph 37 of the Complaint are directed at ANCI, ANCI denies the allegations.

38. ANCI admits that representatives from ANCI, ANCL, and Louisiana-Pacific Canada Ltd. participated in Technical Meetings. To the extent the remaining allegations contained in Paragraph 38 of the Complaint are directed at ANCI, ANCI denies the allegations.

39. To the extent the allegations contained in Paragraph 39 of the Complaint are directed at ANCI, ANCI denies the allegations.

40. ANCI admits that Paragraph 40 of the Complaint refers to and purports to characterize and/or paraphrase various letters. ANCI states that the complete and precise content of the letters can be ascertained from the letters themselves. ANCI denies Plaintiffs' characterization of the letters, and denies any remaining allegations in Paragraph 40 of the Complaint.

41. ANCI admits that it performed testing on Dual Resin M. ANCI further admits that Paragraph 41 of the Complaint refers to and purports to characterize and/or paraphrase a March 19, 2002 presentation. ANCI states that the complete and precise content of the presentation can be ascertained from the presentation itself. ANCI denies Plaintiffs' characterization of the presentation, and denies any remaining allegations in Paragraph 41 of the Complaint.

42. ANCI admits it performed testing of Dual Resin M, including the use of test fences in High Point, North Carolina. ANCI denies Plaintiffs' characterization of the testing, and denies any remaining allegations in Paragraph 42 of the Complaint.

43. ANCI admits it arranged for third-party testing of Dual Resin M. ANCI further admits that Paragraph 43 of the Complaint refers to and purports to characterize and/or paraphrase an unidentified written report concerning such testing. ANCI states that the complete and precise content of the report can be ascertained from the report itself. ANCI denies Plaintiffs' characterization of the report, and denies any remaining allegations in Paragraph 43 of the Complaint.

44. ANCI admits that Paragraph 44 of the Complaint refers to and purports to quote, characterize, and/or paraphrase an unidentified written report of a third-party

8

consultant. ANCI states that the complete and precise content of the report can be ascertained from the report itself. ANCI denies Plaintiffs' characterization of the report and its recommendations, and denies any remaining allegations in Paragraph 44 of the Complaint.

45. ANCI admits that Cross Linker A is a component of Dual Resin M and that Cross Linker B is not a component of Dual Resin M. To the extent the remaining allegations contained in Paragraph 45 of the Complaint are directed at ANCI, ANCI denies the allegations.

46. ANCI admits that Paragraph 46 of the Complaint refers to and purports to quote, characterize, and/or paraphrase an unidentified written report of a third-party consultant. ANCI states that the complete and precise content of the report can be ascertained from the report itself. ANCI denies Plaintiffs' characterization of the report, and denies any remaining allegations in Paragraph 46 of the Complaint.

47. To the extent the allegations contained in Paragraph 47 of the Complaint are directed at ANCI, ANCI denies the allegations.

48. To the extent the allegations contained in Paragraph 48 of the Complaint are directed at ANCI, ANCI denies the allegations.

49. To the extent the allegations contained in Paragraph 49 of the Complaint are directed at ANCI, ANCI denies the allegations.

50. ANCI admits it arranged for third-party testing of Dual Resin M. ANCI further admits that Paragraph 50 of the Complaint refers to and purports to characterize and/or paraphrase an unidentified written report concerning such testing. ANCI states

9

that the complete and precise content of the report can be ascertained from the report itself. ANCI denies Plaintiffs' characterization of the report, and denies any remaining allegations in Paragraph 50 of the Complaint.

51. To the extent the allegations contained in Paragraph 51 of the Complaint are directed at ANCI, ANCI denies the allegations.

52. ANCI admits that ANCL entered into a Warranty with Louisiana-Pacific Canada Ltd. in 2003 related to coating to be used on CanExel® siding. ANCI states that the complete and precise content of the Warranty can be ascertained from the Warranty itself. ANCI denies Plaintiffs' characterizations of the Warranty, and denies any remaining allegations in Paragraph 52 of the Complaint.

53. To the extent the allegations contained in Paragraph 53 of the Complaint are directed at ANCI, ANCI denies the allegations.

54. ANCI admits that Paragraph 54 of the Complaint refers to and purports to characterize and/or paraphrase the 2003 Akzo Nobel Coatings Ltd. 15 Year Warranty. ANCI states that the complete and precise content of the warranty can be ascertained from the document itself. ANCI denies Plaintiffs' characterization of the Warranty, and denies any remaining allegations in Paragraph 54 of the Complaint.

55. ANCI admits that Paragraph 55 of the Complaint refers to and purports to characterize and/or paraphrase the 2003 Akzo Nobel Coatings Ltd. 15 Year Warranty. ANCI states that the complete and precise content of the warranty can be ascertained from the document itself. ANCI denies Plaintiffs' characterization of the Warranty, and denies any remaining allegations in Paragraph 55 of the Complaint.

10

56. ANCI admits that Paragraph 56 of the Complaint refers to and purports to characterize and/or paraphrase the 2003 Akzo Nobel Coatings Ltd. 15 Year Warranty. ANCI states that the complete and precise content of the warranty can be ascertained from the document itself. ANCI denies Plaintiffs' characterization of the Warranty, and denies any remaining allegations in Paragraph 56 of the Complaint.

57. ANCI admits that Paragraph 57 of the Complaint refers to the 2003 Akzo Nobel Coatings Ltd. 15 Year Warranty. ANCI states that the complete and precise content of the warranty can be ascertained from the document itself. ANCI admits that the 2003 Akzo Nobel Coatings Ltd. 15 Year Warranty was signed by Rad Darby and Fernand Gemus. ANCI further admits that Rad Darby and Fernand Gemus are not currently employed by ANCI or ANCL. ANCI states that it is without knowledge or information sufficient to form a belief as to Rad Darby's location when he signed the 2003 Akzo Nobel Coatings Ltd. 15 Year Warranty and, therefore, denies the same. ANCI denies the remaining allegations in Paragraph 57 of the Complaint.

58. To the extent the allegations contained in Paragraph 58 of the Complaint are directed at ANCI, ANCI denies the allegations.

59. ANCI admits that representatives from ANCI, ANCL, and Louisiana-Pacific Canada Ltd. participated in Technical Meetings. To the extent the remaining allegations contained in Paragraph 59 of the Complaint are directed at ANCI, ANCI denies the allegations.

60. To the extent the allegations contained in Paragraph 60 of the Complaint are directed at ANCI, ANCI denies the allegations.

11

61. To the extent the allegations contained in Paragraph 61 of the Complaint are directed at ANCI, ANCI denies the allegations.

62. To the extent the allegations contained in Paragraph 62 of the Complaint are directed at ANCI, ANCI denies the allegations.

63. ANCI admits that it received samples of CanExel® siding for testing and analysis at its High Point, North Carolina facility. ANCI further admits that at least one Technical Meeting occurred in High Point, North Carolina. To the extent the remaining allegations contained in Paragraph 63 of the Complaint are directed at ANCI, ANCI denies the allegations.

64. ANCI admits it performed testing of Dual Resin M, including the use of test fences in High Point, North Carolina. ANCI denies Plaintiffs' characterization of the testing, and denies any remaining allegations in Paragraph 64 of the Complaint.

65. To the extent the allegations contained in Paragraph 65 of the Complaint are directed at ANCI, ANCI denies the allegations.

66. To the extent the allegations contained in Paragraph 66 of the Complaint are directed at ANCI, ANCI denies the allegations.

67. ANCI admits Louisiana-Pacific Canada Ltd. received warranty claims related to its CanExel® siding. To the extent the remaining allegations contained in Paragraph 67 of the Complaint are directed at ANCI, ANCI denies the allegations.

68. To the extent the allegations contained in Paragraph 68 of the Complaint are directed at ANCI, ANCI denies the allegations.

69.     To the extent the allegations contained in Paragraph 69 of the Complaint are directed at ANCI, ANCI denies the allegations.

70.     To the extent the allegations contained in Paragraph 70 of the Complaint are directed at ANCI, ANCI denies the allegations.

71.     ANCI admits Louisiana-Pacific Canada Ltd. received warranty claims related to its CanExel® siding. To the extent the remaining allegations contained in Paragraph 71 of the Complaint are directed at ANCI, ANCI denies the allegations.

72.     ANCI admits Louisiana-Pacific Canada Ltd. received warranty claims related to its CanExel® siding. To the extent the remaining allegations contained in Paragraph 72 of the Complaint are directed at ANCI, ANCI denies the allegations.

73.     To the extent the allegations contained in Paragraph 73 of the Complaint are directed at ANCI, ANCI denies the allegations.

74.     To the extent the allegations contained in Paragraph 74 of the Complaint are directed at ANCI, ANCI denies the allegations.

75.     To the extent the allegations contained in Paragraph 75 of the Complaint are directed at ANCI, ANCI denies the allegations.

76.     To the extent the allegations contained in Paragraph 76 of the Complaint are directed at ANCI, ANCI denies the allegations.

77.     To the extent the allegations contained in Paragraph 77 of the Complaint are directed at ANCI, ANCI denies the allegations.

78.     To the extent the allegations contained in Paragraph 78 of the Complaint are directed at ANCI, ANCI denies the allegations.

13

79. To the extent the allegations contained in Paragraph 79 of the Complaint are directed at ANCI, ANCI denies the allegations.

80. To the extent the allegations contained in Paragraph 80 of the Complaint are directed at ANCI, ANCI denies the allegations.

81. To the extent the allegations contained in Paragraph 81 of the Complaint are directed at ANCI, ANCI denies the allegations.

82. To the extent the allegations contained in Paragraph 82 of the Complaint are directed at ANCI, ANCI denies the allegations.

83. To the extent the allegations contained in Paragraph 83 of the Complaint are directed at ANCI, ANCI denies the allegations in Paragraph 83, including each subpart.

84. To the extent the allegations contained in Paragraph 84 of the Complaint are directed at ANCI, ANCI denies the allegations.

85. To the extent the allegations contained in Paragraph 85 of the Complaint are directed at ANCI, ANCI denies the allegations.

86. ANCI admits that Paragraph 86 of the Complaint refers to and purports to characterize and/or paraphrase a Tolling and Standstill Agreement. ANCI states that the complete and precise content of the Tolling and Standstill Agreement can be ascertained from the document itself. ANCI denies Plaintiffs' characterization of the Agreement, and denies any remaining allegations in Paragraph 86 of the Complaint.

14

**Count I**

**(Fraudulent Inducement)**

87. With respect to Paragraph 87 of Plaintiffs' Complaint, ANCI repeats and incorporates by reference its responses set forth in Paragraphs 1-86, as if fully set forth herein.

88. To the extent the allegations contained in Paragraph 88 of the Complaint are directed at ANCI, ANCI denies the allegations.

89. To the extent the allegations contained in Paragraph 89 of the Complaint are directed at ANCI, ANCI denies the allegations.

90. To the extent the allegations contained in Paragraph 90 of the Complaint are directed at ANCI, ANCI denies the allegations.

91. To the extent the allegations contained in Paragraph 91 of the Complaint are directed at ANCI, ANCI denies the allegations.

92. To the extent the allegations contained in Paragraph 92 of the Complaint are directed at ANCI, ANCI denies the allegations.

93. To the extent the allegations contained in Paragraph 93 of the Complaint are directed at ANCI, ANCI denies the allegations.

94. To the extent the allegations contained in Paragraph 94 of the Complaint are directed at ANCI, ANCI denies the allegations.

95. To the extent the allegations contained in Paragraph 95 of the Complaint are directed at ANCI, ANCI denies the allegations.

15

## Count II

## (Breach of Express Warranty)

96. With respect to Paragraph 96 of Plaintiffs' Complaint, ANCI repeats and incorporates by reference its responses set forth in Paragraphs 1-95, as if fully set forth herein.

97. To the extent the allegations contained in Paragraph 97 of the Complaint are directed at ANCI, ANCI denies the allegations.

98. To the extent the allegations contained in Paragraph 98 of the Complaint are directed at ANCI, ANCI denies the allegations.

99. To the extent the allegations contained in Paragraph 99 of the Complaint are directed at ANCI, ANCI denies the allegations.

100. To the extent the allegations contained in Paragraph 100 of the Complaint are directed at ANCI, ANCI denies the allegations.

101. To the extent the allegations contained in Paragraph 101 of the Complaint are directed at ANCI, ANCI denies the allegations.

102. To the extent the allegations contained in Paragraph 102 of the Complaint are directed at ANCI, ANCI denies the allegations.

103. To the extent the allegations contained in Paragraph 103 of the Complaint are directed at ANCI, ANCI denies the allegations.

## Count III

## (Breach of Implied Warranty of Merchantability)

104. With respect to Paragraph 104 of Plaintiffs' Complaint, ANCI repeats and incorporates by reference its responses set forth in Paragraphs 1-103, as if fully set forth herein.

105. To the extent the allegations contained in Paragraph 105 of the Complaint are directed at ANCI, ANCI denies the allegations.

106. To the extent the allegations contained in Paragraph 106 of the Complaint are directed at ANCI, ANCI denies the allegations.

107. To the extent the allegations contained in Paragraph 107 of the Complaint are directed at ANCI, ANCI denies the allegations.

## Count IV

## (Breach of Implied Warranty of Fitness for a Particular Purpose)

108. With respect to Paragraph 108 of Plaintiffs' Complaint, ANCI repeats and incorporates by reference its responses set forth in Paragraphs 1-107, as if fully set forth herein.

109. To the extent the allegations contained in Paragraph 109 of the Complaint are directed at ANCI, ANCI denies the allegations.

110. To the extent the allegations contained in Paragraph 110 of the Complaint are directed at ANCI, ANCI denies the allegations.

111. To the extent the allegations contained in Paragraph 111 of the Complaint are directed at ANCI, ANCI denies the allegations.

17

112. To the extent the allegations contained in Paragraph 112 of the Complaint are directed at ANCI, ANCI denies the allegations.

113. To the extent the allegations contained in Paragraph 113 of the Complaint are directed at ANCI, ANCI denies the allegations.

## Count V

### (Breach of Contract)

114. With respect to Paragraph 114 of Plaintiffs' Complaint, ANCI repeats and incorporates by reference its responses set forth in Paragraphs 1-113, as if fully set forth herein.

115. To the extent the allegations contained in Paragraph 115 of the Complaint are directed at ANCI, ANCI denies the allegations.

116. To the extent the allegations contained in Paragraph 116 of the Complaint are directed at ANCI, ANCI denies the allegations.

117. To the extent the allegations contained in Paragraph 117 of the Complaint are directed at ANCI, ANCI denies the allegations.

## Count VI

### (Declaratory Judgment)

118. With respect to Paragraph 118 of Plaintiffs' Complaint, ANCI repeats and incorporates by reference its responses set forth in Paragraphs 1-117, as if fully set forth herein.

18

119. Paragraph 119 of the Complaint contains legal conclusions and assertions of law to which no response is required. To the extent any response is deemed necessary, ANCI denies the allegations contained in Paragraph 119 of the Complaint.

120. To the extent the allegations contained in Paragraph 120 of the Complaint are directed at ANCI, ANCI denies the allegations and specifically controverts Plaintiffs' entitlement to the requested declaration.

121. To the extent the allegations contained in Paragraph 121 of the Complaint are directed at ANCI, ANCI denies the allegations and specifically controverts Plaintiffs' entitlement to the requested declaration.

122. To the extent the allegations contained in Paragraph 122 of the Complaint are directed at ANCI, ANCI denies the allegations and specifically controverts Plaintiffs' entitlement to the requested declaration.

123. To the extent the allegations contained in Paragraph 123 of the Complaint are directed at ANCI, ANCI denies the allegations and specifically controverts Plaintiffs' entitlement to the requested declaration.

124. To the extent the allegations contained in Paragraph 124 of the Complaint are directed at ANCI, ANCI denies the allegations and specifically controverts Plaintiffs' entitlement to the requested declaration.

125. To the extent the allegations contained in Paragraph 125 of the Complaint are directed at ANCI, ANCI denies the allegations and specifically controverts Plaintiffs' entitlement to the requested declaration.

## Count VII

## (Unfair and Deceptive Trade Practices Act)

126. With respect to Paragraph 126 of Plaintiffs' Complaint, ANCI repeats and incorporates by reference its responses set forth in Paragraphs 1-125, as if fully set forth herein.

127. Paragraph 127 of the Complaint contains legal conclusions and assertions of law to which no response is required. To the extent any response is deemed necessary, ANCI denies the allegations contained in Paragraph 127 of the Complaint.

128. Paragraph 128 of the Complaint contains legal conclusions and assertions of law to which no response is required. To the extent any response is deemed necessary, ANCI denies the allegations contained in Paragraph 128 of the Complaint.

129. To the extent the allegations contained in Paragraph 129 of the Complaint are directed at ANCI, ANCI denies the allegations.

130. To the extent the allegations contained in Paragraph 130 of the Complaint are directed at ANCI, ANCI denies the allegations.

131. To the extent the allegations contained in Paragraph 131 of the Complaint are directed at ANCI, ANCI denies the allegations.

132. Paragraph 132 of the Complaint contains legal conclusions and assertions of law to which no response is required. To the extent any response is deemed necessary, ANCI denies the allegations contained in Paragraph 132 of the Complaint.

133. To the extent the allegations contained in Paragraph 133 of the Complaint are directed at ANCI, ANCI denies the allegations.

20

134. To the extent the allegations contained in Paragraph 134 of the Complaint are directed at ANCI, ANCI denies the allegations.

135. Paragraph 135 of the Complaint contains legal conclusions and assertions of law to which no response is required. To the extent any response is deemed necessary, ANCI denies the allegations contained in Paragraph 135 of the Complaint.

ANCI denies that Plaintiffs are entitled to the relief requested in the WHEREFORE clause following Paragraph 135 or to any relief whatsoever.

## AFFIRMATIVE AND OTHER DEFENSES

Having answered the allegations of the Complaint and having denied any liability whatsoever, ANCI further denies any allegations that have not been expressly admitted, and sets forth below its affirmative defenses. By setting forth these affirmative and other defenses, ANCI does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiffs. Moreover, nothing herein stated is intended or shall be construed as an acknowledgement that any particular issue or subject matter is relevant to Plaintiffs' allegations.

## FIRST AFFIRMATIVE DEFENSE

The Complaint, in whole or in part, fails to state a claim or claims on which relief may be granted against ANCI.

## SECOND AFFIRMATIVE DEFENSE

Any conduct by ANCI, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of the damages alleged in the Complaint.

21

**THIRD AFFIRMATIVE DEFENSE**

The claims set forth in the Complaint are barred because Plaintiffs' damages, if any, were actually or proximately caused by one or more unforeseeable, independent, intervening, and/or superseding events over which ANCI had no control and for which ANCI is not legally responsible.

**FOURTH AFFIRMATIVE DEFENSE**

Any and all losses and/or damages, if any, sustained by Plaintiffs were the result of Plaintiffs' actions or omissions and/or the actions or omissions of third parties over whom ANCI had no control.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitation and/or repose.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the equitable doctrines of waiver, estoppel, release, good faith, and/or laches.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the statute of frauds and/or application of the parole evidence rule.

**EIGHTH AFFIRMATIVE DEFENSE**

The product that is the subject of this action may not have been in substantially the same condition as when it entered the stream of commerce. If Plaintiffs have been

22

damaged, which ANCI denies, such damages were caused by the alteration and/or misuse of the product at issue and/or user error.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part because the product that is the subject of this action was at all times properly designed, manufactured, packaged, labeled and distributed.

## TENTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, because the product was not defective and was suitable for the purpose for which it was intended.

## ELEVENTH AFFIRMATIVE DEFENSE

If Plaintiffs sustained any damages as alleged, such damages arose from, and were caused by, risks, hazards, and dangers knowingly assumed by Plaintiffs. Plaintiffs' recovery accordingly is barred or should be reduced by Plaintiffs' assumption of the risk.

## TWELFTH AFFIRMATIVE DEFENSE

ANCI denies that it concealed, suppressed or misrepresented any material facts. ANCI denies that Plaintiffs reasonably or justifiably relied to their detriment on any alleged representation or other conduct by ANCI.

## THIRTEENTH AFFIRMATIVE DEFENSE

The Complaint is an improper joinder and an improper accumulation of parties.

23

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to mitigate their alleged damages and, therefore, any recovery should not include alleged damages that Plaintiffs could have avoided by reasonable care and diligence.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' fraud-based claims, to the extent such claims are alleged, are barred by their failure to plead the necessary elements of these claims with particularity as required by Federal Rule of Civil Procedure 9.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' damages claim, if any, for non-economic losses is limited by the applicable law.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' damages, if any, are barred by the economic loss rule and/or the independent tort doctrine.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The Complaint fails to state facts sufficient to sustain a claim for, or recovery of, punitive damages.

## NINETEENTH AFFIRMATIVE DEFENSE

ANCI states that it committed no act or omission that was malicious, oppressive, willful, wanton, reckless or grossly negligent; therefore, any award of punitive damages is barred. ANCI further states that Plaintiffs' claim for punitive damages is barred, in

24

Case 1:12-cv-00625-WO-JLW   Document 36-1   Filed 11/26/12   Page 62 of 81

whole or in part, by the Constitution of the United States and/or the constitution and laws of any other state, province, or country whose laws are deemed to apply.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs are barred from recovery because the alleged damages sought in the Complaint are excessively remote and speculative, and thus not cognizable, compensable, or recoverable.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

If Plaintiffs sustained damages, which ANCI denies, any application of joint and several liability laws violates ANCI's constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and/or the constitution and laws of any state, province, or country whose laws are deemed to apply.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs are precluded from recovery against ANCI in whole or in part, pursuant to the product-liability laws of the state, province, or country whose laws are deemed to apply to this case. Further, ANCI specifically pleads every defense available under applicable product-liability laws.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

ANCI did not make to Plaintiffs, nor did it breach, any express or implied warranties and/or breach any warranties created by law. To the extent that Plaintiffs rely on any theory of breach of warranty, such claims are barred by applicable law, and for lack of privity with ANCI and for failure of Plaintiffs, or Plaintiffs' representatives, to give timely notice to ANCI of any alleged breach of warranty. ANCI further specifically

25

pleads all affirmative defenses under the Uniform Commercial Code or similar law existing and which may arise in the future, as enacted in the state, province, or country whose laws are deemed to apply in this case.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

ANCI did not breach, materially or otherwise, any alleged agreement or contract with Plaintiffs and/or any legal duty allegedly owed to Plaintiffs.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs are barred from recovery for lack of compliance with the terms, conditions, and obligations of any express contract, warranty, or similar provision. Plaintiffs may not enforce any contract, warranty, or provision to which they failed to abide by.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs waived any express or implied warranties.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs are barred from recovery for lack of compliance with the terms of any express warranty.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs are barred from recovery for the alleged violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1, *et seq.*, as these statutes are not applicable to this matter.

26

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Venue is improper under 28 U.S.C. § 1391. Moreover, this Court is not a proper forum to adjudicate this matter under the principles of *forum non conveniens.*

## THIRTIETH AFFIRMATIVE DEFENSE

Plaintiffs lack either standing or capacity, or both, to bring some or all of the claims alleged in the Complaint.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

ANCI states that the Complaint is barred by intentional or negligent spoliation of evidence.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

ANCI is entitled to setoffs for all amounts paid, payable by, or available from collateral sources, including but not limited to, insurance.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

ANCI is entitled to, and claims the benefit of, all defenses and presumptions set forth in or arising from any rule of law or statute of the state, province, or country whose laws are deemed to apply to any cause of action asserted by Plaintiffs.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

ANCI incorporates the defenses of all others who are or may become parties to this action, as though fully set forth herein.

27

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

ANCI hereby gives notice that it intends to rely on such other defenses as may become available or appear during the course of discovery proceedings in this case and hereby reserves the right to amend this Answer to assert such defenses.

## PRAYER FOR RELIEF

Wherefore, having answered the Complaint as fully as it is advised, Defendant Akzo Nobel Coatings, Inc. respectfully prays unto the Court as follows:

1. That Plaintiffs have and recover nothing from ANCI;

2. That the Court dismiss the Complaint with prejudice as to ANCI;

3. That the Court award to ANCI its reasonable attorneys' fees and costs of suit as provided by law;

4. That the Court provide a jury trial for all issues triable to a jury; and

5. That the Court award ANCI such other and further relief as it deems just and proper.

This the 31st day of August, 2012.

/s/ Alan W. Duncan
Alan W. Duncan
N.C. State Bar No. 8736
Stephen M. Russell, Jr.
N.C. State Bar No. 35552
SMITH MOORE LEATHERWOOD LLP
300 N. Greene Street, Suite 1400
Greensboro, NC 27401
Telephone: 336-378-5200
Facsimile: 336-378-5400
alan.duncan@smithmoorelaw.com
steve.russell@smithmoorelaw.com

28

Harvey L. Kaplan
Mark C. Hegarty
John C. Vaglio
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 54108
Telephone: 816-474-6550
Facsimile: 816-421-5547
hkaplan@shb.com
mhegarty@shb.com
jvaglio@shb.com

*Attorneys for Defendant Akzo Nobel
Coatings, Inc.*

29

**CERTIFICATE OF SERVICE**

This is to certify that on this date the foregoing document was electronically filed

with the Clerk of Court using the CM/ECF system, which will send the notification of

such filing to the following:

> Richard T. Boyette (rtb@cshlaw.com)
> *Attorney for Plaintiffs*

This the 31st day of August, 2012.

> /s/ Alan W. Duncan
> Alan W. Duncan
> N.C. State Bar No. 8736
> *Attorney for Defendant Akzo Nobel*
> *Coatings, Inc.*

30

Case 1:12-cv-00625-WO-JLW   Document 36-1   Filed 11/26/12   Page 68 of 81

| | |
|---|---|
| Louisiana Pacific Corporation and Louisiana-Pacific Canada Ltd., | Court File No. 1:12-cv-625 |
| Plaintiffs, | |
| v. | **Affidavit of Shawn M. Raiter in Support of Louisiana Pacific's Memoranda in Opposition to Akzo Nobel Coatings, Ltd.'s Motions to Dismiss** |
| Akzo Nobel Coatings, Inc., Akzo Nobel Coatings, Ltd, and John Does 1-10, | |
| Defendants. | |

# EXHIBIT K

# Louisiana Pacific / Akzo Nobel Technical Meeting Agenda
## March 22, 2005
### High Point, North Carolina

**Attendees:** Bill Camp · George Hirtle · Bob Smith · Forest Fleming · Jean Francois Caron · Jim Bignell
Jaroslav Stavik · Chris Mader · Rick Gray · Denis Bethiaume

## Exterior

**Paints:** *BOTTOM 30% OR BEVEL/MADER MOSTLY ALMOND/GRAY/MADER — CAN AKZO IMPROVE*

- Coverage of bevel (D-5 / UP)  Bill / Denis / Jean Francois / Jim / George / Chris
- Curtain Strength: *FLEXABILITY OR COATING?*
- Film Thickness  *→ ON ALMOND + MADER ARE WE USING A HIGHER SOLIDS PAINT ON SPRAY GUNS.*
- Gloss Variation - Heat vs. Curtain Enhancer  *(IMMAQUA 3 MONTH GOOD REPORT*
- Blisters - Causes and Cures
- ✓ Edge Coat – Viscosity vs. Coverage  *(FULL VISCOSITY ON T/C 14 SEC) (ON B/C DO WE STILL HAVE FULL FLEXIBILITY WITH REDUCED SOLIDS)*

**Topcoat:** <u>Review Status</u>

- Performance on Curtain Coater  *⇒ FLEXABILITY OF CURTAIN*  Bill / Denis / Jean Francois / Jim / George / Chris
- Base Line HCOH wt anticipated increase capacity (Review)  *?*

**Siding Line Capacity:**  George / Bill

- Status on line operations (Review)

**Extended Warranty:** (20 years)  Jean Francois / Forest

- Presentation of 2nd Warranty Draft

**Accelerated Exposure on Current Production:**  Forest / Jean Francois / Chris  *GOOD.*
*UV INHIBITORS  (SYSTEM WITH GLOSS 3 MONTH LOOKS GOOD.*
- Immaqua Results  *(45 HOUR  MIDNIGHT BLUE & COUNTRY RED GETTING  (BLEACHING + FADING) )*
- High Point Test Fence

**Exterior Paint Failure** (complaints)  Bill

- Review Claims  *LEAN*

## Interior

**Print Quality:**

- Ink quality  Jim / George / Bill
- Wetting Agent  Jean Francois
- EPDM Roll (Trial Results)

**Majestic Series:** (Review Status)

- Rework or disposal of remaining inventory  Bill / George / Jim  *TRY TO DISPOSE. NEVER WILL BE USED. JIM + GEORGE TO CHECK.*

Louisiana Pacific Corporation and Louisiana-Pacific Canada Ltd.,

Court File No. 1:12-cv-625

Plaintiffs,

v.

Akzo Nobel Coatings, Inc., Akzo Nobel Coatings, Ltd, and John Does 1-10,

Defendants.

**Affidavit of Shawn M. Raiter in Support of Louisiana Pacific's Memoranda in Opposition to Akzo Nobel Coatings, Ltd.'s Motions to Dismiss**

# EXHIBIT L

# Agenda

Attending:       Bill Camp          Forest Fleming
                   Jaroslav Stavik     Denis Berthiaume
                   George Hirtle       Jim Bignell
                   Jack Johnson

## Chemical Modifications / Alternate Resin System

Topics

1. Polyethylene Oxide        Jaroslav, Bill, Forest
2. Alternate Resin System
3. Flame Spread
4. Alternate Wax
5. Chem Trend Sealer

Status April 19, 2007

The use of PEO was reinstated in November 2006, on line 2 boards after being suspended in June 2006. PEO was also introduced to line 1 board in late February 2007, after positive results were seen during lab and line trials.

## Blisters / Paint Failure
Topics

1. Jaroslav to give Board Surface analysis report.

2. Louisiana Pacific has hired a field person to inspect field complaints. The position of Claims analyst has been filled by Brian Derouin, who is located in the Montreal area.

1

**Paper Sticking / Highlighting / Blushing**

Topics

1. Midnight Blue / Dutch Green
2. Low PVC

Status April 19, 2007

Trials conducted Nov 8, 2006 showed positive results when using a combination of low PVC Coating materials and High Cobb paper. Forest Fleming recommended reducing line speed to 17 ft min and IR setting of 3.5 Further trials should be conducted using L6-17-66, more reactive topcoat and varying line speeds and IR settings in order to increase running parameters.

**Accelerated Exposure / East River Test Fence**

- Anti Yellowing Trial Results
- Line 1, 16 ft Sand / Almond
- Akzo Tinted Topcoat on # 2 Edge coater
- UP White Basecoat System / White Topcoat System
- Line 1 Board with PEO without PEO
- 8 Years exposed Drip Edge
- East River Retain Midnight Blue

**Paint Failure**

1. Bill Camp to give report

**Warranty**

1. Line 1 brown board to be entered into warranty as per appendix D.
2. Delta E Color (Change due to weathering)

Status April 19, 2007

Typical values and specs will be sent to Forest Fleming.

2

## Storage and Handling

Jim Bignell
George Hirtle

### Status April 19, 2007

- Akzo has been requested to lower inventory:        Interior      150.000
       Exterior     400.000

- A meeting was held to discuss storage in October. During this meeting it was suggested that the Vacuum Coater Cleaning station be moved to another area.

- Exterior Mixing equipment be removed from Print Line Paint shop and relocated in the Coating Line Paint shop. This would allow for more storage, and Exterior lines could be supplied material without transporting paint outside.

- Doorway is to be installed from Coating Line into Coating Line Paint Shop.

## Interior

## Print Quality / Sponge Roll

- Further discussion required with George and Jaroslav.
- George will place order for Sponge Roll.

### Interior Status April 19, 2007

Sponge roll trial was conducted on April during a production of Beauport Crystal White April 12, 2007. Initial results looked positive though further testing will be required.

3

Louisiana Pacific Corporation and Louisiana-Pacific Canada Ltd.,

Court File No. 1:12-cv-625

Plaintiffs,

v.

**Affidavit of Shawn M. Raiter in Support of Louisiana Pacific's Memoranda in Opposition to Akzo Nobel Coatings, Ltd.'s Motions to Dismiss**

Akzo Nobel Coatings, Inc., Akzo Nobel Coatings, Ltd, and John Does 1-10,

Defendants.

# EXHIBIT M

# Minutes
April 24, 2007

**Akzo Nobel Coatings / Louisiana Pacific**
**Technical Meeting, High Point NC**
**Aril 24, 2007**

| Attending: | Bill Camp | Forest Fleming |
|---|---|---|
| | Jaroslav Stavik | Denis Berthiaume |
| | George Hirtle | Jim Bignell |
| | Jack Johnson | |

## Chemical Modifications / Alternate Resin System

1. Polyethylene Oxide      Jaroslav, Bill, Forest
2. Alternate Resin System
3. Flame Spread
4. Alternate Wax
5. Chem Trend Sealer

## PEO      Minutes from April 24, 2007

The use of PEO has been reinstated on line 2 board, beginning Nov 2006, at a rate to allow a 15 – 17 % reduction in waxes and resins while maintaining board integrity. PEO is also being used at a rate to allow a 6 – 7% reduction in waxes and resins on line 1 board, this procedure was started in late Feb, 2007 after achieving positive lab and line trial results. Samples of both line 1 – 2 brown board and painted board will be sent to Forest Fleming and Roger Couture.

Bill Camp to write a letter to Forest Fleming stating the amount of PEO presently in Line 1and line 2 board.

## Alternate Resin System / Flame Spread      Minutes from April 24, 2007

It is felt that changes will have to be made to both the substrate and the coating to achieve improvement in the flame spread rating. LP presently achieving a rating of E

A = Flashover not possible      B = Flashover not possible

C = Flashover after more than 10 minutes      D = Flashover between 2 – 10 minutes

E = Flashover in less than 2 minutes      F = Not tested

1

A class rating of D is the current default for hardboard, though this is the minimum acceptable. Future anticipated changes, specifically in France would see this change to a C rating.

LWS has been submitted to Akzo Nobel St. Jerome requesting the development of Flame Retardant Material.

Initially it is felt that the Vacuum Coater, Spay Guns and 1 Curtain Coater would be best suited for applying this material.

Material will be tinted to a color, as yet to be determined.

An in line trial will be scheduled for mid to late May. This trial will consist of 2-3 press loads of line1 Siding being produced with a fire retardant additive in the substrate. This board will in turn be coated with a Fire Retardant system presently being developed by Akzo Nobel Coatings. Trial date and agenda will be set at a later date. Board samples will be sent to Forest Fleming and Roger Couture.

Enquiries will be made to determine if Air Quality testing will be necessary during trials.


**Alternate Wax**                          **Minutes from Apl 24, 2007**

A proposed alternative wax IGI 1297U has been being used as necessary since approximately Sept - Oct 2007. This wax has a slightly lower melt point than IGI 12GOU. Currently IG1-1297U, IGI-1297A, IGI-1260U and Dominion CW-158 are used in the process. This procedure will be continued as standard practice.

Brown board / Painted board samples will be sent to Forest Fleming for wax bleed analysis.

**Chem Trend Sealer**                      **Minutes April 24, 2007**

A trial, consisting of 2 – 3 press loads using Chem Trend material will be scheduled for late May. Some of this board will be painted into solid and stained product. Samples of this board will be sent to Forest Fleming and Robert Couture.

Forest Fleming restated that he felt adhesion could be a problem if this material is used on the wet mat.

A report dated Jan 9, 2007 stating Akzo Nobel Coatings recommended protocol concerning Chem-Trend trials was given to Jack Johnson.

2

Jack Johnson recommended establishing a protocol to be followed concerning trial notification.

**Blisters /**          **Minutes From Apl 24, 2007**

Jaroslav gave a presentation out lining results he had received from board samples sent to Chem-Trend.

Jaroslav stated the main cause of large oil can blisters is wax deposits, dust and lipophilic substances under the blisters. Chem trend has products to help minimize the effects of some of these issues. Additional improvement could be found in reducing micro blisters by maintaining better viscosity and temp control of material

### Paper Sticking / Highlighting / Blushing

1. Midnight Blue / Dutch Green
2. Low PVC

### Status April 19, 2007

Trials conducted Nov 8, 2006 showed positive results when using a combination of low PVC Coating materials and High Cobb paper. Forest Fleming recommended reducing line speed to 17 ft min and IR setting of 3.5 further trials should be conducted using L6-17-66, more reactive topcoat and varying line speeds and IR settings in order to increase running parameters.

### Minutes from April 24, 2007

Further trials will be done on Midnight Blue using L6-17-66 More Reactive Topcoat. These trials will focus the ability to increase line speed to 19 ft per min.

Trial Dates and agenda to be determined.

Trials will also be done on Repaints:

| | | |
|---|---|---|
| More Reactive T/C L6-17-66 | Re-Coating | Harder T/C Low PVC System |
| More Reactive T/C L6-17-66 | Re-Coating | BMI Board (2006 Paint System) |
| Harder T/C Low PVC System | Re-Coating | Harder T/C Low PVC System |
| Harder T/C Low PVC System | Re-Coating | BMI Board (2006 Paint System) |

Repaint trials will be conducted at 16 ft min.

Enquiries will be made be to see if air quality testing will be necessary during trial.

3

Case 1:12-cv-00625-WO-JLW    Document 36-1    Filed 11/26/12    Page 78 of 81

## ISO 9000 Certification

Jaroslav Stavik stated that all suppliers to LP will have to be ISO certified.

Boards exposed in Arizona from Nov 8, 2007 trial.

| Test # 2 | Low PVC Basecoat / L6-23-57 topcoat | IR = 4.5 |
| Test #10 | Control | IR = 4.5 |
| Test # 8 | Low PVC Basecoat / L6-17-66 topcoat | IR = 2 |

Roger Couture reports that early results look good. Additional samples have been exposed on High Point and St Jerome test Fences.

Jaroslav made enquiry as to the methods that could be used to ensure adequate cure is being reached. Forest has since forwarded information regarding DMA testing, with prepared samples being sent to Louisville for analyses.

## Accelerated Exposure / East River Test Fence

- Anti Yellowing Trial Results ✗
- Line 1, 16 ft Sand / Almond
- Akzo Tinted Topcoat on # 2 Edge coater
- UP White Basecoat System / White Topcoat System
- Line 1 Board with PEO without PEO
- 8 Years exposed Drip Edge
- East River Retain Midnight Blue

## Minutes from April 24, 2007

Visual evaluation results sheet from Emmaqua was passed out by Bill Camp.

6 Months of 400 Days
- Anti Yellowing Trial Results
Initial results looked good.

*400*

6 Months of 400 Days   *400 DAYS or DAYS LOOK GOOD*
Line 1, 16 ft Sand / Almond
Samples from line 1 -16 ft Sand and Almond that had slight mud cracking were sent for exposure. Initial results looked good.

6 Months of 400 Days   *400 DAYS or 400 DAYS LOOK*

4

- Akzo Tinted Topcoat on # 2 Edge coater
  Initial results looked good.
  The use of tinted topcoat has been added to the Siding line spec sheet for White.

*[handwritten: THIS TOPCOAT DOESN'T LOOK TOO GOOD / SAMPLE]*

  400 of 400 Days
- UP White Basecoat System / White Topcoat System  X
  Results look good..
  400 of 400 Days
- Line 1 Board with PEO without PEO  X
  Results look good.

- 8 Years exposed Drip Edge
  Samples of Almond and White showed flaking of paint on drip edge. By contrast
  a sample of Sierra showed minimal weathering effects.

- East River Retain Midnight Blue

Midnight Blue samples exposed 4 years Florida     . # H03279
Midnight Blue samples exposed 4 years East River  # H03279

*[handwritten: TO COMMENT]*

Samples appear to be faded with some cracking on surface of peaks. East River exposed
samples generally appear to be worse. This was thought to be a result of the freeze thaw
cycle the samples would be exposed to in East River. Recorded film thickness of these
samples will be checked.

*[handwritten: CHECK TO SEE IF AIR 20 THAT EXPOSED LOWER A/C BASICOW, WITH HARDER T/C]*

**Paint Failure**          **Minutes from April 24, 2007**

   1. Bill Camp to submit report via Monique Pelletier.


**Warranty**

   1. Line 1 brown board to be entered into warranty as per appendix D.
   2. Delta E Color (Change due to weathering)

Status April 19, 2007

Typical values and specs will be sent to Forest Fleming.

**Minutes from April 24, 2007**

Typical values of line 1 brown board will be sent to Forest Fleming to be entered into
warranty as per appendix D.

Bill suggested that talks of a 25 year warranty may be re opened.

5

Case 1:12-cv-00625-WO-JLW    Document 36-1    Filed 11/26/12    Page 80 of 81

Delta E Color (Change do to weathering) could be discussed at time when warranty is re opened.

**Storage and Handling**

Jim Bignell
George Hirtle

Status April 19, 2007

- Akzo has been requested to lower inventory:

| | | |
|---|---|---|
| Interior | 150.000 |
| Exterior | 400.000 |

- A meeting was held to discuss storage in October. During this meeting it was suggested that the Vacuum Coater Cleaning station be moved to another area.

- Exterior Mixing equipment be removed from Print Line Paint shop and relocated in the Coating Line Paint shop. This would allow for more storage, and Exterior lines could be supplied material without transporting paint outside.

- Doorway is to be installed from Coating Line into Coating Line Paint Shop.

### Minutes from April 24, 2007

Jack Johnson suggested this should be a Green Belt project.

**Interior**

**Print Quality / Sponge Roll**

- Further discussion required with George and Jaroslav.
- George will place order for Sponge Roll.

Interior Status April 19, 2007

Sponge roll trial was conducted on April during a production of Beauport Crystal White April 12, 2007. Initial results looked positive though further testing will be required.

### Minutes from April 24, 2007

Further trials will be scheduled using the sponge roll. George will contact suppliers concerning different substrate of rolls.

6