## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LOUISIANA-PACIFIC           )
CORPORATION and LOUISIANA-  )
PACIFIC CANADA LTD.,        )
                              )
      Plaintiffs,          )
                              )
     v.                   )          1:12CV625
                              )
AKZO NOBEL COATINGS, INC.,  )
LLC, AKZO NOBEL COATINGS,  )
LTD. and JOHN DOES 1-10,    )
                              )
      Defendants.      )

## <u>MEMORANDUM OPINION AND RECOMMENDATION</u>
## <u>OF UNITED STATES MAGISTRATE JUDGE</u>

This matter is before the court on Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (Docket Entry 24) and motion to dismiss on the grounds of *forum non conveniens*. (Docket Entry 26.) Plaintiffs have filed responses in opposition to the motions. (Docket Entries 32, 33.) On December 18, 2013, a hearing was held regarding Defendants' motions. The matter was taken under advisement. For the following reasons, the court will recommend that Defendants' motion to dismiss on the grounds of *forum non conveniens* be granted.

### I.    FACTUAL BACKGROUND

The Complaint identifies Louisiana-Pacific Corporation ("Louisiana-Pacific") as a United States-based company with facilities in Roaring River, North Carolina and having over 500 employees in North Carolina. (Compl. ¶ 6, Docket Entry 4.) Louisiana-Pacific Canada Ltd. ("LP Canada") is identified as a Canada-based entity that makes and sells prefinished siding

and other similar products used in the construction industry. (*Id.* ¶ 7.) Akzo Nobel Coatings, Inc. ("Akzo Nobel Coatings") is identified in the complaint as a Delaware corporation with its principal place of business in Kentucky. (*Id.* ¶ 10.) Akzo Nobel ("Akzo Nobel") is identified as a foreign entity; it is undisputed that it is a Canadian corporation with its headquarters and principal place of business in Ontario. (*See* Affidavit of Denis Berthiaume, ¶ 3, Docket Entry 25-1.)

This case arises out of the alleged premature failure of wood coating supplied by Akzo Nobel to LP Canada. (Compl. ¶¶ 1-3; Warranty at 1, attached to Berthiaume Aff., Ex. 1.) LP Canada manufactures and sells CanExel siding, a prefinished exterior siding made from compressed wood, fiber, resin and wax. (Compl. ¶¶ 5-8, 17-18.) Akzo Nobel began manufacturing and supplying coating for CanExel siding in the 1980s. In 2001, after several years of testing, a new custom dual resin coating ("CanExel Dual Resin M") was approved by LP Canada for use on its new hardwood siding. The coatings supplied by Akzo Nobel for use on CanExel siding were manufactured in Quebec, Canada. (Berthiaume Aff. ¶ 4.)

In 2003, LP Canada and Akzo Nobel agreed to a 15-year warranty related to the performance of the CanExel Dual Resin M coating on the hardwood CanExel siding. (*Id.* ¶ 12.) The warranty was entered into by the two Canadian companies and by its terms is governed by the laws of Nova Scotia, Canada. (*Id.*)

In 2007, LP Canada began to receive an increasing number of claims related to its CanExel siding, which it attributed to the Akzo Nobel coating. LP Canada advised Akzo Nobel of the claims in 2008, and the companies worked together to investigate the causes of the increase in claims. Plaintiffs contend that they suffered injuries due to the premature

failing of the CanExel Dual Resin M coating as applied to LP Canada's CanExel siding in

Canada. On July 5, 2012, LP Canada, together with its United States affiliate Louisiana-

Pacific, filed this lawsuit in this district, asserting claims for (1) fraudulent inducement; (2)

breach of express warranty; (3) breach of implied warranty of merchantability; (4) breach of

implied warranty of fitness for a particular purpose; (5) breach of contract; (6) declaratory

judgment; and (7) violation of the North Carolina Unfair and Deceptive Trade Practices Act

(UDTPA).

## II.    DISCUSSION

Defendants have filed two motions, one a motion to dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and the second a motion to

dismiss pursuant to the doctrine of *forum non conveniens*. While Defendants have raised

jurisdictional issues in their Rule 12(b)(2) motion, the court will first address their *forum non*

*conveniens* motion. "A district court . . . may dispose of an action by a *forum non conveniens*

dismissal, bypassing questions of . . . personal jurisdiction, when considerations of

convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. v. Malaysia Int'l*

*Shipping Corp.*, 549 U.S. 422, 432 (2007).

### A. *Forum Non Conveniens* Generally

A party seeking to dismiss a case for *forum non conveniens* must show that "the

alternative forum is available to the plaintiff, that the alternative forum is adequate, and that

the alternative forum is more convenient in light of the public and private interests

involved." *DiFrederico v. Marriott Int'l., Inc.*, 714 F.3d 796, 799 (4th Cir. 2013). In analyzing

such a claim, the Court must consider every material factor and hold defendants to their

burden of persuasion on all elements of the analysis. *Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010). The moving party, therefore, bears the burden of showing that an adequate alternative forum exists. *Id.*

B. Plaintiff's Choice of Forum

Ordinarily a strong favorable presumption is applied to a plaintiff's choice of forum. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). However, where the real parties in interest are foreign corporations, the choice of a foreign forum is not entitled to heightened deference. *See Sinochem* 549 U.S. at 430 ("When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor applies with less force. . ."; *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56, 261 (1981); *see also GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999) (noting that "when a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight.") (internal quotation omitted). Where "the plaintiff has not chosen to bring the case in his home country, the court need give little deference to the plaintiff's choice of forum." *Galustian*, 591 F.3d at 732. One exception would be in a case where dismissal under *forum non conveniens* may cause a plaintiff to "lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313, n. 8 (5th Cir. 2008) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)).

Here, Defendants have agreed to waive any statute of limitations defense, thus negating one of the primary reasons for giving deference to a plaintiff's choice of forum.

4

Additionally, a review of the record indicates that the real parties in interest here are two Canadian corporations, LP Canada and Akzo Nobel. Therefore, in weighing the relevant factors, the Court gives "little deference" to Plaintiffs' choice of North Carolina as a forum for this suit.

### C. Application of *Forum Non Conveniens*

#### 1. Available Forum

Defendants here argue that Canada is an available alternative forum. A foreign forum is "available" "when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft*, 454 U.S. at 255 n. 22 (quoting *Gilbert*, 330 U.S. at 506-07). In this case, at least one plaintiff and one defendant are Canadian corporations. Additionally, Defendants have agreed to submit to service of process in Canada and to waive any statute of limitations defense that might arise as a result of re-filing in a Canadian court. Therefore, Canada is available as a potential forum.

#### 2. Adequacy

"A foreign forum is adequate when '(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011) (quoting *Fid. Bank PLC v. N. Fox Shipping N.V.*, 242 F. App'x 84, 90 (4th Cir. 2007) (unpublished)) (internal quotation marks omitted.) Here, where two of the parties to the lawsuit are Canadian corporations, these parties can come within the jurisdiction of the Canadian courts. As noted above, Defendants have agreed to submit to submit to service of process in Canada.

When a foreign forum has jurisdiction, it is inadequate only "[i]n rare circumstances . . . where the remedy offered by the other forum is clearly unsatisfactory." *Piper Aircraft*, 454 U.S. at 254 n. 22. Plaintiffs contend that Canadian courts are inadequate because they provide different rights, remedies and procedures than North Carolina courts. This argument has been rejected by courts throughout this country. *See, e.g., Logan Int'l Inc. v. SureTech Completions (USA), Inc.*, Civil Action No. H-13-0492, 2013 WL 3005592, at \*3-4 (S.D. Tex. June 10, 2013); *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 797 (5th Cir. 2007). Adequacy does not require that the alternative forum provide identical relief, either substantive or procedural, as an American court. *See, e.g., ElcomSoft, Ltd. v. Passcovery Co., Ltd.*, Civil Action No. 2:13cv18, 2013 WL 6705188, at \*2 (E.D. Va. Dec. 19, 2013). The Supreme Court has noted that a dismissal on *forum non conveniens* grounds "may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery." *Piper Aircraft*, 454 U.S. at 250; *see also Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster N.V.*, 569 F.3d 189, 202-04 (4th Cir. 2009). "An inadequate forum based on substantive law arises 'where the alternative forum does not permit litigation of the subject matter of the dispute.'" *Compania Naviera*, 569 F.3d at 205 (quoting *Piper Aircraft*, 454 U.S. at 254 n. 22).

Plaintiff argues that "Canadian courts would not be adequate for adjudicating LP's North Carolina claims because LP would not have the benefit of critical aspects of the American legal system [because] there is generally no right to a civil jury trial in Canada, English fee-shifting applies, and discovery is limited." (Pl.'s Br. at 11, Docket Entry 32.) However, as noted by another court, "[t]hat Plaintiff's recovery may be less in Canada than it

would hope to recover here does not render the Canadian court inadequate. Similarly, the absence of a right to trial by jury does not render the Canadian court inadequate." *Logan Int'l Inc. v. 1556311 Alberta Ltd.*, 929 F. Supp. 2d 625, 633 (S.D. Tex. 2012) (internal citation omitted).

Defendants have presented affidavits of two Canadian lawyers indicating that Nova Scotia and Quebec courts would have jurisdiction over these claims and would provide an available and adequate forum for Plaintiffs to litigate their claims against Defendants. (*See* Def.'s Reply, Exs. 4, 5, Aff. of John P. Merrick, Docket Entry 42-4 and Aff. of Robert E. Charbonneau, Docket Entry 42-5). Moreover, Canadian law would likely apply to these claims even if they are litigated in this country. Under the terms of the warranty agreed upon by the parties, any legal issues arising from the warranty are to be governed by the laws of the Province of Nova Scotia, Canada. By their agreement to the terms of this warranty, LP Canada acknowledged that Canadian law provides adequate remedies and damages for claims arising under the warranty. Moreover, the possibility that Canadian law might differ from the law applied in this forum is no basis for finding Canada to be an inadequate forum. As the Supreme Court noted in *Piper Aircraft*, "if conclusive or substantial weight were given to the possibility of a change in law, the *forum non conveniens* doctrine would become virtually useless" because the forum selected by a plaintiff will almost always be one in which the law is more advantageous than that of any alternative forums. *Piper Aircraft*, 454 U.S. at 250.

Defendants have presented evidence that a Canadian forum allows Plaintiffs redress for its claims. Because Plaintiffs "will not be deprived of all remedies" in Canada, and because "all parties can come within [Canada's] jurisdiction," this Court finds that Canada is

both an available and an adequate alternative forum. *Tang*, 656 F.3d at 248 (alteration provided) (quoting *Fid. Bank PLC*, 242 F. App'x at 90 (unpublished) (internal quotations marks omitted)).

3. Convenience

a. *Legal standard*

The Court must next determine which forum is best suited for the litigation between these parties. Because Canada "is both available and adequate," the Court "must weigh the public and private interest factors" relevant to determining convenience. *Tang*, 656 F.3d at 249.

b. *Public Factors*

The public factors to be considered by the court are: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized controversies decided at home;" (3) "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;" (4) "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law;" and (5) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gilbert*, 330 U.S. at 509 (internal quotation marks omitted)).

With regard to the first factor, there is no evidence in the record as to docket conditions in Canada compared to North Carolina. Therefore, this factor is neutral.

With respect to the second and third factors, the real parties in interest in this matter are Canadian companies. As a result, "home" for the purposes of this analysis is Canada, which clearly has a strong interest in adjudicating this dispute involving the manufacture, sale

and distribution of allegedly defective products throughout Canada. The CanExel Dual Resin M coating was manufactured and sold in Canada by Akzo Nobel, a Canadian company. (Berthiaume Aff. ¶ 11.) The coating was then shipped from Quebec to Nova Scotia, where LP Canada's plant was located. (*Id.*) The CanExel siding was manufactured and the coating was applied in Canada by LP Canada. (*Id.*) There is no allegation that any North Carolina consumers were injured by the CanExel Dual Resin M coating.

Plaintiffs contend that Akzo Nobel Coatings, the U.S.-based entity with facilities in High Point, North Carolina, was involved in the development, research and testing of the CanExel Dual Resin M coating at its North Carolina facility. These allegations are largely based on the affidavits of Bill Camp, a former employee of LP Canada and David Ritter, a current Louisiana Pacific employee who resides in Tennessee. (Docket Entry 34, 35.) These affidavits make many assertions about the internal workings of Akzo Nobel which appear to not be based on personal knowledge and are conclusory in nature. On the other hand, the affidavits of Akzo Nobel employees and officers appear to more accurately reflect the process responsible for formulation of CanExel Dual Resin M and the limited involvement of the North Carolina facility in its development.[1] North Carolina's minimal interest in adjudicating this dispute which only tangentially involves this state is clearly outweighed by the interests of Canada. *See Tang*, 656 F.3d at 252; *NLA Diagnostics LLC v. Theta Tech. Ltd.*, No. 3:12CV00087, 2012 WL 3202274, *5 (W.D.N.C. Aug. 3, 2012). This factor clearly

---

[1] For example, in his affidavit, Akzo Nobel's General Manager in Quebec acknowledges that Akzo Nobel requested and considered data and advice from its U.S. affiliate which had other dual resin coating systems. (Berthiaume Aff. ¶ 10.) Likewise, Akzo Nobel acknowledges that the coating was applied to test fences at the High Point, North Carolina facility of Akzo Nobel Coatings. (Berthiaume Supp. Aff. ¶ 9, Docket Entry 41-3.) However, according to Berthiaume, "the number of test fences in Quebec and Nova Scotia is significantly greater than in North Carolina." (*Id.*)

favors trial in Canada. Moreover, as outlined above, LP Canada and Akzo Nobel agreed to a warranty as to the coating's performance when applied to the siding, and the two companies agreed that Nova Scotia law would apply.

Fourth, while not controlling, as noted, trial in this district would necessarily involve application of foreign law, as the parties agreed that Nova Scotia law would be controlling. This concern would obviously not be present in Canada. *See, e.g., Wolff v. Zip.ca, Inc.*, No. 1:09CV92, 2009 WL 1628887, at *3 (M.D.N.C. June 10, 2009) ("Although this does not rule out hearing the case in North Carolina, the court would be applying foreign laws in a dispute involving the financial problems of a Canadian baseball team. This matter is best handled by the courts in Ottawa. Accordingly, the court will recommend dismissal of the action on *forum non conveniens* grounds."). This factor, therefore, favors dismissal.

Finally, the fifth factor, "the unfairness of burdening citizens in an unrelated forum with jury duty," weighs in favor of dismissal. This is, at its heart, a dispute between two Canadian companies regarding activities that took place primarily in Canada. Jurors in this district would have little or no relationship with this case. Thus, this factor also favors dismissal.

*c. Private Factors*

The private factors that the Court must consider for determining whether to dismiss a case for *forum non conveniens* include (1) "the relative ease of access to sources of proof; (2) "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;" (3) "the possibility of view of premises, if view would be appropriate to the action;" and (4) any "other practical problems" that must be addressed in

order to "make trial of a case easy, expeditious, and inexpensive." *Piper Aircraft*, 454 U.S. at 241 n. 6 (quoting *Gilbert*, 330 U.S. at 509) (internal quotation omitted).

The private factors in this case favor dismissal. As noted by Defendants, because the coating was developed, manufactured, and sold in Canada, it appears that the vast majority of relevant documents are maintained in Canada. (Berthiaume Aff. ¶ 20.) Additionally, a significant number, indeed, a majority, of the witnesses identified by the parties at this early stage are residents of Canada. Plaintiffs have identified 36 potential witnesses, only five of whom they identify as residing in North Carolina.[2] (Aff. of Shawn M. Raiter ¶ 7, Docket Entry 36.) Most telling, however, is that Plaintiffs' list fails to include nearly all the Canadian residents identified in their own Complaint and affidavits submitted in response to these motions. Defendants, on the other hand, have identified 21 individuals with involvement in, and first-hand knowledge of, the matters alleged in the Complaint. This list includes all individuals named or identified in Plaintiffs' Complaint. (*See* Berthiaume Aff. ¶¶ 15-19; Berthiaume Supp. Aff. ¶¶ 11, Docket Entries 27-1 and 42-1.)

Plaintiffs challenge Defendants' claims that the documents and physical evidence in this case are located in Canada. However, Plaintiffs' arguments are conclusory and generally not supported by the documents they cite. Moreover, as conceded by Plaintiffs, critical documents (and witnesses) are located in both North Carolina and Canada, and can easily be accessed in either forum. (*See* Pl. Mem. at 14-15, Docket Entry 32.)

---

[2] Other than identifying the five witnesses who Plaintiffs contend reside in North Carolina, Raiter simply lists names of other witnesses, with no substantive narrative as to who these witnesses are or where they reside. (Raiter Aff. ¶ 8.) The Court notes as well that Akzo Nobel avers that only three of the five witnesses identified by Louisiana Pacific as North Carolina residents do in fact live in North Carolina. (Aff. of Forest Fleming ¶ 11, Docket Entry 42-2; Berthiaume Supp. Aff. ¶ 19, Docket Entry 42-1.)

As for the availability of compulsory process, the majority of the essential witnesses live in Canada and most are no longer employed by the parties. These witnesses would be outside this Court's compulsory process, but it appears that most are Canadian residents. As averred by Canadian attorneys, the courts of Nova Scotia and Quebec have procedures by which they can compel a witness from another province to appear in its court to provide live testimony. (Merrick Aff. ¶ 27; Charbonneau Aff. ¶¶ 25-26.)

The cost of compelling attendance, moreover, weighs in favor of trial in Canada. While travel to North Carolina from Canada would most likely cost the same as travel from Canada to North Carolina, it appears that there are significantly more witnesses in Canada than in North Carolina.

Regarding the third factor, neither side has indicated that a premises view is necessary in this case. Finally, as to other "practical problems" which would make trial of this case expeditious and less expensive, this Court finds that judicial economy favors trying this case in Canada, where most of the witnesses and critical documents are, and where the underlying dispute in this matter truly took place.

The private and public interest factors indicate that the Canadian forum is a substantially more convenient alternative. As a result, dismissal of this lawsuit in favor of refiling in Canada is appropriate.

### III. CONCLUSION

Defendants have satisfied their burden to demonstrate that the Canadian forum is substantially more convenient. Therefore, this Court **RECOMMENDS** that the motion to dismiss pursuant to the doctrine of *forum non conveniens* (Docket Entry 26) be **GRANTED**

and the action be **DISMISSED**, without prejudice to refiling in Canada. **IT IS FURTHER RECOMMENDED** that, in the event the Court adopts this Recommendation, Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) (Docket Entry 24) be **DENIED AS MOOT**.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
February 7, 2014